[No. G009406. Fourth Dist., Div. Three. May 23, 1991.]

In re ANDREW I., a Minor.
THE PEOPLE, Plaintiff and Respondent, v.
ANDREW I., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b), parts III and IV of the DISCUSSION are not published, because they do not meet the standards for publication.

## COUNSEL

Rita Morales, under appointment by the Court of Appeal, for Defendant and Appellant.

Patrick DuNah as Amicus Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Rudolf Corona, Jr., Rhonda L. Cartwright and Pamela A. Ratner, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MOORE, J.—A petition was filed in the Los Angeles County Superior Court seeking to declare Andrew I. a ward of the court alleging he committed a burglary on September 18, 1989. (Welf. & Inst. Code, § 602; Pen. Code, § 459.) The court sustained the petition. The case was then transferred to Orange County where Andrew lived. (Welf. & Inst. Code, § 750.) At the disposition hearing, the court found Andrew had committed a residential burglary, committed him to the California Youth Authority for six years and ordered him to pay restitution to the victims. The probation department was directed to make a recommendation to the Youth Authority as to the amount of restitution owed.

Andrew appeals, contending (1) the evidence fails to support the finding he committed a burglary; (2) the trial court failed to specifically find the degree of the offense or whether the burglary was a felony or misdemeanor; and (3) it was an abuse of discretion to commit him to the California Youth Authority. Amicus curiae joins in the first two arguments and further contends the lower court erred by leaving the determination of the amount of restitution to the probation department. We affirm but remand for further proceedings.

## FACTS

Andrew's juvenile record dates back to July of 1986, when he was 13 years old. He has run away from home numerous times. Prior to September 1989, he had misdemeanor convictions for theft, burglary and escape from juvenile hall all arising out of separate incidents.

On September 18, Andrew and his friend Scott H. were staying with Tom D. During the jurisdiction hearing, Scott's mother testified that on that date she was living with "[m]y two daughters, son, and my boyfriend." On cross-examination, the following occurred: "Q: When you state that your son lived in your home, what was his name? [¶] A: Scott . . . . [¶] [Defense counsel]: No further questions. [¶] The witness: He was not living in the home. I did not state he was living at home. [¶] Q: By [defense counsel]: It is just my recollection that the district attorney asked you who was living in the home and you mentioned you had a son living in the home. [¶] A: Anthony . . . . [¶] Q: There is another son? [¶] A: Yes. I have two sons and two daughters. [¶] Q: So the son living in the home is Anthony? [¶] A: Anthony . . . [¶] Q: How long has Scott not been living in your home? [¶] A: Uh—approximately about a week, two weeks before. [¶] Q: Were his— was his clothing still in the home? [¶] A: He had just left and never returned one day. [¶] Q: Was his clothing in the home? [¶] A: A few articles, yes. [¶]

Q: What did you mean, 'a few articles'? [¶] A: He had some clothes there, but not all of his clothes, no."

Deputy Fatone, who interviewed Andrew after his arrest, testified Andrew told him "there was another friend that was staying . . . at [Tom's] apartment and his name was Scott . . . . Scott had been having some trouble with his parents, his mother, primarily, and he had been accused of taking some jewelry, which Scott insisted that he did not, and so Scott decided to move out. He already been [*sic*] staying with [Tom], but his property, his clothing was at [his mother's] residence."

At Scott's request, Tom gave him a ride to his mother's residence to retrieve some of his clothes. Andrew went along with them. En route, the three agreed to steal some valuables which belonged to Scott's mother and her boyfriend. Before reaching the residence, they stopped in a park and inhaled typewriter correction fluid, commonly known as "White Out."

When they arrived at the house, Anthony, Scott's brother, was there watching television. Without disturbing him, they took several knives, guns and some stereo equipment.

Andrew was later arrested. After his arrest, Andrew admitted his participation in the crime.

### DISCUSSION

### I.  *Sufficiency of the Evidence*

Both Andrew and amicus curiae contend the evidence fails to establish he illegally entered the victims' home. Andrew also argues his ingestion of "White Out" precludes a finding he had the specific intent required to commit a burglary.

Where the juvenile court has sustained a petition, an attack on the sufficiency of the evidence to support that ruling is governed by the substantial evidence rule. (*In re Roderick P.* (1972) 7 Cal.3d 801, 808-809 [103 Cal.Rptr. 425, 500 P.2d 1].) "The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. The court must view the entire record in the light most favorable to the judgment (order) to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the minor guilty beyond a reasonable doubt." (*In re Oscar R.* (1984) 161 Cal.App.3d 770, 773 [207 Cal.Rptr. 789].)

"Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." (Evid. Code, § 411.) ■ "If a trier of fact has believed the testimony . . . this court cannot substitute its evaluation of the credibility of the witness unless there is either a physical impossibility that the testimony is true or that the falsity is apparent without resorting to inferences or deductions. [Citations.]" (*People* v. *Swanson* (1962) 204 Cal.App.2d 169, 173 [22 Cal.Rptr. 178].)

■ Andrew and amicus curiae argue there was no illegal entry of the victims' residence because Scott lived there and invited Andrew and Tom inside knowing they intended to commit theft. Since Penal Code section 459 "protects against *intruders* into indoor areas, not persons committing crimes in their own homes," one cannot be convicted of burglary when he or she has an unconditional possessory right to enter the property. (*People* v. *Gauze* (1975) 15 Cal.3d 709, 714, 716 [125 Cal.Rptr. 773, 542 P.2d 1365].) Nonetheless, it is not necessary that a defendant's entry constitute a trespass to support a burglary conviction. "The law after *Gauze* is that one may be convicted of burglary even if he [or she] enters with consent, provided he [or she] does not have an unconditional possessory right to enter." (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649].) Here, Andrew clearly had no possessory interest in or right to enter the victims' residence. The mere fact Scott invited him inside is not, alone, sufficient to preclude a burglary conviction.

Citing *People* v. *Superior Court* (*Granillo*) (1988) 205 Cal.App.3d 1478 [253 Cal.Rptr. 316] and *People* v. *Thomas* (1977) 74 Cal.App.3d 320 [141 Cal.Rptr. 340], Andrew and amicus curiae argue Scott's possessory interest in the residence and his admission of Andrew and Tom knowing they intended to commit a theft show there was no illegal entry. In *Granillo*, the defendant entered an apartment leased by an undercover police officer posing as a fence with the intention of selling stolen property. The Court of Appeal held no burglary occurred since the officer had an unconditional possessory interest in the premises and invited the defendant to enter with full knowledge he intended to commit a felony. (*People* v. *Superior Court* (*Granillo*), *supra*, 205 Cal.App.3d at pp. 1484-1485.) In *Thomas*, the defendant claimed the alleged victim, a television store owner, was a fence and asked him to break in and remove certain designated items. The trial court instructed the jury the defendant was guilty of burglary if he broke into the store to either commit a theft or receive stolen property. On appeal, the conviction was reversed because "[c]learly an entry into the possessor's premises for the purpose of carrying out the possessor's instructions is not burglary." (*People* v. *Thomas, supra*, 74 Cal.App.3d at p. 323.)

In both cases, no issue existed with respect to the possessor's control of the premises. Here, the evidence established Scott did not have an unconditional possessory interest in his mother's residence. Scott had left home one or two weeks before the crime occurred. In fact, Scott's alleged original purpose in returning to the residence was to pick up clothes he had left behind.

Neither did Scott acquire a possessory interest simply because his mother had an obligation to support him. ■ "The parental obligation to provide for necessaries does not imply a possessory right in the parental residence. The obligation to provide for necessaries need not be fulfilled by providing such items in kind, [citation]. Financial support is all that is required by law. No possessory right in a parental residence is implied by this duty of financial support." (*In re Richard M.* (1988) 205 Cal.App.3d 7, 15 [252 Cal.Rptr. 36].)[1]

■ Furthermore, even if Scott had implied permission to enter his mother's home, Andrew would still be guilty of burglary. "[O]ne who enters a room or building with intent to commit larceny is guilty of burglary even though express or implied permission to enter has been given to him personally or as a member of the public." (*People* v. *Deptula* (1962) 58 Cal.2d 225, 228 [23 Cal.Rptr. 366, 373 P.2d 430]; see also *People* v. *Garrow* (1955) 130 Cal.App.2d 75, 83 [278 P.2d 475]; *People* v. *Corral* (1943) 60 Cal.App.2d 66, 71 [140 P.2d 172].) Permission to enter, whether express or implied, does not confer upon the entrant an unconditional possessory interest in the premises. These two concepts are not synonymous.

■ Andrew alternatively contends the evidence fails to support the judgment because his ingestion of "White Out" precluded him from forming the requisite specific intent to commit a burglary. The People offered the testimony of the deputy sheriff who questioned Andrew after his arrest. Andrew admitted he, Scott and Tom intended to take guns and other valuables from the home. While Andrew denied having any intent to steal, and his expert witness testified ingesting "White Out" may have deprived him of

[1]Andrew relies on the Washington Supreme Court's recent decision in *State* v. *Howe* (1991) 116 Wn.2d 466 [805 P.2d 806] which states in part "a juvenile can only be convicted of burglary of his family home if his *privilege to enter the home* is revoked . . . ." (*Id.* at p. 477 [805 P.2d at p. 812], italics added.) However, Washington law and California law differ on the element of an unlawful entry for a burglary. A person can commit burglary in Washington by entering or remaining on the premises if he or she is not licensed, invited, or privileged to so enter or remain. (*State* v. *Steinbach* (1984) 101 Wn.2d 460 [679 P.2d 369, 370].) In California, a burglary occurs if the person enters without an unconditional possessory right to do so. (*People* v. *Pendleton, supra,* 25 Cal.3d at p. 382.) Furthermore, in California a parent's obligation to provide for his or her child's necessities does not create a possessory right in the parental residence. (*In re Richard M., supra,* 205 Cal.App.3d at pp. 15-16.)

the ability to form the specific intent to commit burglary, the trial court chose to believe the deputy sheriff's testimony showing Andrew knew what was occurring when he entered the victims' residence.

Therefore, we conclude the evidence supports the lower court's finding Andrew committed a burglary.

## II.  *Failure to Designate the Degree of the Crime*

■ Andrew and amicus curiae contend the crime must be deemed a second degree burglary because the lower court failed to make a finding as to the degree of the offense. We disagree.

The petition alleged Andrew had burglarized "a dwelling house." At the completion of the jurisdiction hearing, the court sustained the petition finding only that the evidence supported the charge beyond a reasonable doubt. However, during the disposition hearing the court stated: "I would note that this offense is a residential burglary . . . ." Thereafter it committed Andrew to the Youth Authority "for the statutory period of six years. . . ."

Penal Code section 1192 states in part, "upon conviction by the court without a jury, of a crime or attempted crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree. Upon the failure of the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." Penal Code section 1157 is similar except that it refers to jury trials or bench trials where a jury trial is waived. Under California Rules of Court, rule 1488(e)(5),[2] the juvenile court must make findings on "the degree of the offense and whether the offense would be a misdemeanor or felony had the offense been committed by an adult."

Sections 1192 and 1157 do not require a court to repeat some ancient magical incantation. In *People* v. *Anaya* (1986) 179 Cal.App.3d 828 [225 Cal.Rptr. 51], the court upheld a first degree burglary finding where the jury's verdicts found the burglaries were " 'committed upon an inhabited building and a residence.' " (*Id.* at p. 831.) "The jury should not be faulted for having used the long form rather than the label. There is nothing uncertain or ambiguous in the jury's findings." (*Id.* at p. 832; see also *People* v. *Goodwin* (1988) 202 Cal.App.3d 940, 946-947 [249 Cal.Rptr. 430] [jury's

---

[2]The Judicial Council has renumbered this rule several times, but the substance of it has remained constant. The rule was originally designated rule 1355(f)(5). In 1989, the Judicial Council redesignated it rule 1489(f)(5). The present designation became effective January 1, 1991.

verdicts used the phrase " 'residential burglary.' "]; *People* v. *Atkins* (1989) 210 Cal.App.3d 47, 51-53 [258 Cal.Rptr. 113] [verdict found the defendant guilty of " 'burglary of a residence' "].) In *People* v. *Deay* (1987) 194 Cal.App.3d 280 [239 Cal.Rptr. 406], the Court of Appeal affirmed a first degree burglary finding where, after a bench trial, the court returned guilty verdicts to two charges with a finding of " 'residential burglary' " as to each count. (*Id.* at p. 283.) "We see no practical difference between burglary of an inhabited dwelling house and residential burglary." (*Id.* at p. 284.)

However, in *In re Jacob M.* (1987) 195 Cal.App.3d 58 [240 Cal.Rptr. 418], we reduced a finding to second degree burglary where the juvenile court made no explicit statement concerning the degree of the offense. Although *Anaya* and *Deay* were distinguished, in dictum, we further said that even if they were "viewed as substantially indistinguishable from the case at bar, we . . . are unable to follow these cases." (*Id.* at p. 63.) Our decision was criticized in *People* v. *Goodwin, supra,* 202 Cal.App.3d 940: "There is no logical reason to compel the fact finder to articulate a numerical degree when, by definition, 'first degree burglary' and 'residential burglary' are one and the same thing. . . . A descriptive and definitive label constitutes an acceptable alternative to specifying degree by number." (*Id.* at p. 947.)

We agree with the holding in *Goodwin*—the *Jacob M.* analysis is illogical. We conclude that the requirement of a finding as to the degree of the crime can be satisfied by using a descriptive label as well as by a numerical degree. "The statute protects defendants from the risk the degree of the crime will be increased after judgment. [Citation.] '[T]he key is not whether the "true intent" of the jury can be gleaned from circumstances outside the verdict form itself; instead, application of the statute turns only on whether the jury specified the degree in the verdict form.' [Citation.]" (*People* v. *Anaya, supra,* 179 Cal.App.3d at p. 832.) In juvenile proceedings, the statutes and rule are met if, at the end of the jurisdiction hearing, or during the disposition hearing, the court makes a finding as to the degree of the crime either by numerical designation or a sufficiently clear description of the offense. (Cal. Rules of Court, rule 1488(e)(5).)[3]

Neither the fact that the petition sustained alleged Andrew burglarized "a dwelling house," nor his six-year commitment to the Youth Authority can be used to support a finding he committed burglary in the first degree. But at the disposition hearing the juvenile court found Andrew committed "a residential burglary." Penal Code section 460 states in part "every burglary

---

[3]Recently, the Fifth District reached the same conclusion in a juvenile matter involving similar facts. (*In re Raymond M.* (1991) 228 Cal.App.3d 1508, 1513 [279 Cal.Rptr. 566].)

of an inhabited dwelling house . . . is burglary of the first degree." "The terms 'residence' and 'inhabited dwelling house' are equivalent." (*People* v. *Garcia* (1989) 216 Cal.App.3d 233, 238 [264 Cal.Rptr. 662]; see also *People* v. *Harrell* (1989) 207 Cal.App.3d 1439, 1445-1446 [255 Cal.Rptr. 750].) This characterization of the offense is sufficiently descriptive to support a first degree burglary finding as required by statute. As noted, rule 1488(e)(5) permits the finding to be made at the disposition hearing. Therefore, it is not necessary to reduce the degree of the offense to second degree.

The dissent contends the Supreme Court has rejected the proposition a finding on the degree of the crime in the form of a description of the offense satisfies the statutory requirement. Of the five Supreme Court cases cited only two, *In re Kenneth H.* (1983) 33 Cal.3d 616 [189 Cal.Rptr. 867, 659 P.2d 1156] and *People* v. *Flores* (1974) 12 Cal.3d 85 [115 Cal.Rptr. 225, 524 P.2d 353], involved burglaries. Furthermore, *Kenneth H.* and *Flores* involved cases tried before the 1982 amendment of Penal Code section 460. Prior to that change only a nighttime burglary of an inhabited dwelling, trailer coach or the inhabited portions of other buildings constituted a first degree offense. Thus, describing the crime as a "residential burglary" would not have sufficed for a first degree burglary finding. Commencing in 1983 the night-time requirement was deleted. (Stats. 1982, ch. 1297, § 1, p. 4786.) Finally, none of the cases the dissent relies upon involved an attempt to make a finding as to the degree of the crime in the form of a description of the offense as opposed to designating it by numerical degree.

■ The next question is whether the lower court erred by failing to determine whether Andrew's crime was a felony or a misdemeanor. In part, Welfare and Institutions Code section 702 states: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." (See *In re Kenneth H., supra*, 33 Cal.3d at p. 619.) Since the lower court found Andrew committed a residential burglary, it was not required to make this determination. A first degree burglary conviction is punishable only by imprisonment in the state prison. (Pen. Code, § 461, subd. 1.) Therefore, it constitutes a felony. (Pen. Code, § 17, subd. (a).)

Citing our prior decision in *In re Dorothy B.* (1986) 182 Cal.App.3d 509 [227 Cal.Rptr. 472], Andrew and amicus argue the lower court had the authority under rule 1488(e)(5) to declare the offense to be a second degree burglary even though the evidence established otherwise. (*Id.* at pp. 520-521; see also *In re Raymond M., supra*, 228 Cal.App.3d at p. 1512.) Nothing in rule 1488 or in *Dorothy B.* supports the conclusion a juvenile court has the

discretion to exercise leniency in this manner. Accordingly, we conclude *In re Dorothy B., supra*, 182 Cal.App.3d 509 and *In re Raymond M., supra*, 228 Cal.App.3d 1508 (which relies exclusively on *In re Dorothy B.*) were incorrectly decided to the extent they hold a juvenile court has the authority to reduce the degree of an offense where the evidence establishes the minor could only have committed an offense of a higher degree.

### III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The case is remanded to the juvenile court with directions to obtain a recommendation from the probation department as to whether any restitution is owed. If the department so recommends, the juvenile court shall set a hearing to determine the amount of restitution. In all other respects, the judgment is affirmed.

Sills, P. J., concurred.

**SONENSHINE, J.,** Dissenting.—I agree with the majority on three points. First, a finding the allegation in a pleading is true is insufficient to fix the degree of the offense, even where the petition alleges a burglary in the first degree. Second, sentencing a minor to the prescribed term for first degree burglary is not the equivalent of fixing the degree. (*In re Jacob M.* (1987) 195 Cal.App.3d 58, 63 [240 Cal.Rptr. 418].) Third, an appropriate statement at a dispositional hearing is sufficient to fix the degree. (*In re Dorothy B.* (1986) 182 Cal.App.3d 509, 516 [227 Cal.Rptr. 472].)

I part company with the majority where it concludes a statement by the court that a burglary is "residential" or of "an inhabited dwelling" is sufficient. The majority finds the use of a descriptive label satisfactory designation of the degree. However, as this division recognized in *Jacob M.*, the Supreme Court has held to the contrary.

In particular, the court in *People v. Beamon* (1973) 8 Cal.3d 625, 629, footnote 2 [105 Cal.Rptr. 681, 504 P.2d 905], gave great deference to the specific statutory language in the complementary statutes, Penal Code sections 1157 and 1192. There, the jury found the defendant guilty of robbery and also found an allegation he was armed with a deadly weapon to be true.

*See footnote, *ante*, page 572.

However, it failed to fix the degree of the crime. Because armed robbery was of the first degree, the prosecution argued the jury's factual finding on the weapon enhancement was sufficient to imply a first degree finding. The Supreme Court disagreed: "We cannot assume, contrary to the clear legislative direction, that because a factual finding was made which would have warranted a determination of first degree robbery, the jury unmistakably intended [citation] to make that determination when it refrained from expressly fixing the degree."

Cases following *Beamon* have likewise refused to draw inferences where the degree was not specifically expressed. (See, e.g., *People* v. *Thomas* (1978) 84 Cal.App.3d 281, 285 [148 Cal.Rptr. 532].) In *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011], the Supreme Court reaffirmed the *Beamon* principle and its intervening decisions on this question (*People* v. *Dixon* (1979) 24 Cal.3d 43, 51-52 [154 Cal.Rptr. 236, 592 P.2d 752]; *People* v. *Flores* (1974) 12 Cal.3d 85, 94-95 [115 Cal.Rptr. 225, 524 P.2d 353]) and cited approvingly the decision in *Thomas* and other appellate court cases. (*Id.* at p. 380.)

The *McDonald* court concluded: "In the present case the verdict form failed to specify the degree; in the absence of such specification, the jury's finding on the special circumstance allegation is irrelevant and the conviction must be deemed second degree murder as a matter of law pursuant to the unambiguous language of section 1157." (*Id.* at p. 382.) Thus, the Supreme Court has consistently interpreted the statutes in a manner irreconcilable with the majority opinion.

Here, the majority declares the judge's reference to a factual finding, *by implication*, fixed the degree of the offense. This it cannot do. As the statutes presently read, the court must *specifically* fix the degree of the crime.

The majority opinion goes a step beyond mere legislative revision, however, leaping toward judicial activism. It holds the trial court's reference to a residential burglary obviates the duty to make the required finding under California Rules of Court, rule 1488(e)(5).[1]

As we emphasized in *In re Dorothy B., supra*, 182 Cal.App.3d 509, the rule (then numbered 1355(f)(5)) requires certain findings to be made after the trial court has determined the allegations of the petition are true. But the

---

[1]Subdivision (e)(5) of rule 1488 provides, in pertinent part: "(e) If the court determines . . . that the allegations of the petition are true, the court shall make findings on each of the following, noted in the order: . . . [¶] (5) In a section 602 matter, the degree of the offense and whether it would be a misdemeanor or felony had the offense been committed by an adult. These determinations may be deferred until the disposition hearing."

majority holds that once the evidence has established the minor could only have committed an offense of a higher degree, the juvenile court has no further discretion. Under the majority's reasoning, the required finding under the statute would not only be unnecessary, it would be ineffectual.

In *In re Kenneth H.* (1983) 33 Cal.3d 616 [189 Cal.Rptr. 867, 659 P.2d 1156], the Supreme Court had occasion to address the application of the rule in a case where the juvenile court had found a burglary petition true. At the dispositional hearing, the court made no finding as to whether the offense was a felony or misdemeanor. (*Id.* at p. 618.) The Supreme Court held the burglary "was necessarily of the second degree for two *independent* reasons: first, the entry giving rise to the charge occurred in the daytime; [fn. omitted] second, the court made no finding as to the degree of burglary as required by Penal Code section 1157, as well as rule 1355(f)(5), [fn. omitted] rendering it of the second degree by operation of law. [Citation.] Therefore, the crime which had been found true was one which, if committed by an adult, can be either a misdemeanor or a felony. (Pen. Code, § 461.)" (*Id.* at p. 619, italics added.)

Because the court declared its two reasons to be independent, we must conclude each was sufficient alone to achieve the result. Here, too, there was no finding as to the degree of the burglary. Therefore, the offense should be deemed to be in the second degree and remanded for determination of whether it is a misdemeanor or a felony.

Appellant's petition for review by the Supreme Court was denied August 15, 1991. Mosk, J., was of the opinion that the petition should be granted.