168 Cal.App.4th 1387 (2008)
In re C.R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
C.R., Defendant and Appellant.
No. B205565.
Court of Appeal of California, Second District, Division Eight.
December 9, 2008.
*1389 Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
RUBIN, J.
C.R. (appellant) appeals from the order finding him to be a ward of the juvenile court because he committed a gang-related murder, contending the court's failure to determine whether his crime was of the first or second degree mandates a ruling of second degree murder. He also contends there was insufficient evidence to support a finding of first degree murder. Because there was no need for the court to make a finding of degree, and because there was sufficient evidence of first degree murder, we affirm.

FACTS AND PROCEDURAL HISTORY
Shortly before 9:00 p.m. on June 9, 2007, Brian Herrera was shot to death while standing in front of a home where he and other friends were attending a baby shower. The home was in an area where two rival gangs operatedthe East Side Trece and Loco Park gangsand a Loco Park gang member lived *1390 in the house next door. The shooting was witnessed by several people, who said two men rode by on bikes and one turned around as they passed and opened fire. The shooter was wearing a gray hooded sweatshirt and had the hood pulled up over his head. One eyewitness made a strong, but not positive identification of C.R., a member of the East Side Trece gang, as the shooter. Another witness, who lived nearby, heard the gunshots and ran to his balcony to investigate. From there, he saw the two bicyclists and heard one of them yell, "we got him, we got him." That person dropped a gun, and the other rider went back to retrieve the weapon. Another person told the police that appellant had admitted his involvement in the shooting, but recanted at trial.[1]
A petition was filed alleging that appellant, who was 14 at the time of the shooting, had committed a willful, deliberate, and premeditated first degree murder (Pen. Code, § 187, subd. (a)), and should therefore be declared a ward of the juvenile court. (Welf. & Inst. Code, § 602.) The petition also alleged that appellant committed his crime for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(C)) and personally and intentionally discharged a firearm. (Pen. Code, § 12022.53, subds. (b), (c).) After a hearing, the juvenile court found the allegations of the petition were true, declared appellant a ward of the court and a set a maximum confinement term of life.
Appellant raises two issues on appeal: (1) the juvenile court's failure to determine whether he committed first or second degree murder automatically results in an order that his crime was of the second degree; and (2) regardless, there was insufficient evidence that a first degree murder occurred.[2]

DISCUSSION

1. A Finding of the Degree of Murder Was Not Required

(1) When a defendant pleads guilty, or is convicted in a court trial, of a crime that is distinguished into degrees, the court must determine the degree of which he is guilty. If the court fails to do so, "the degree of the crime ... of which the defendant is guilty, shall be deemed to be of the lesser degree." (Pen. Code, § 1192.) Penal Code section 1157 contains a substantially identical provision that applies to jury trials or to court trials when a jury has *1391 been waived. Both provisions have been held applicable to juvenile ward proceedings (In re Kenneth H. (1983) 33 Cal.3d 616, 619 [189 Cal.Rptr. 867, 659 P.2d 1156]; In re Andrew I. (1991) 230 Cal.App.3d 572, 580-581 [281 Cal.Rptr. 570] (Andrew I.)), and are complemented by a nearly identical rule of court that is expressly applicable to wardship proceedings (Cal. Rules of Court, rule 5.780(e)(5)).
This requirement may be satisfied in two ways: (1) by a finding that specifically refers to the degree of the crime by its statutory numerical designation; and (2) by findings that encompass the statutory factual predicates of the degree of the crime. (People v. Goodwin (1988) 202 Cal.App.3d 940, 947 [249 Cal.Rptr. 430].) The court in Andrew I., supra, 230 Cal.App.3d 572, applied this reasoning in a case arising from a sustained juvenile wardship petition for first degree burglary. Even though the juvenile court did not expressly state that the minor had committed first degree burglary, its finding that the minor committed a residential burglary was sufficient because a residential burglary is, by operation of law, a first degree burglary. (Id. at pp. 580-582.) In murder cases, for instance, a jury verdict that the defendant acted with premeditation and deliberation satisfies Penal Code section 1157, and an express finding of first degree murder is not required. (People v. San Nicolas (2004) 34 Cal.4th 614, 634-636 [21 Cal.Rptr.3d 612, 101 P.3d 509].)
The juvenile court in this case found the petition's first degree murder count was true, meaning the "minor committed the crime of violation of 187(a) of the Penal Code...." Elsewhere, the court described the killing as a "wanton, cold [callous] act of just riding a bike and an innocent human being killed for absolutely no reason. Absolutely none. The court is appalled by the behavior. The only ... appropriate response is California Youth Authority." When setting the term of confinement, the court said it had to look at "the low, middle or high term. Based on this, basically, being a wanton disregard for the safety of others, the health of others, and being such an awful event, the court believes the high term is appropriate. I don't know if there is a mid. [¶] The court does believe life is appropriate."
Penal Code section 187, of course, includes both first and second degree murder, and both call for life terms. The court never expressly stated whether appellant had committed first degree murder, as alleged in the petition, and never stated that the killing had been premeditated or deliberate. Appellant therefore contends that no finding of degree was made, compelling us to deem his crime as second degree murder.
(2) In People v. Mendoza (2000) 23 Cal.4th 896 [98 Cal.Rptr.2d 431, 4 P.3d 265], the Supreme Court held that Penal Code section 1157 did not apply where the crime proven was a felony murder, which could be of only *1392 the first degree. In Sanchez v. Superior Court (2002) 102 Cal.App.4th 1266 [126 Cal.Rptr.2d 200] (Sanchez), the Court of Appeal applied Mendoza's reasoning to conclude that Penal Code section 1192 did not apply to a guilty plea where the indictment specifically charged first degree murder. According to the Sanchez court, "[w]hen the language of the charge can only be first degree murder, an accusatory pleading does not charge a crime `distinguished or divided into degrees' and, therefore, [Penal Code] section 1192 does not apply." (Sanchez, supra, at pp. 1269-1270.)
(3) The petition in this case specified that appellant had committed a willful, deliberate, and premeditated first degree murder, and the juvenile court found the allegations of the petition were true. Because the language of the charge could be only a first degree murder, we hold that the petition did not allege a crime that was divided into degrees and that a finding of degree was therefore not required.[3]
Appellant also contends that even if no express finding was required, the juvenile court did not exercise its discretion to determine whether to reduce the degree of his offense as a matter of leniency. We disagree. When it came time to calculate appellant's commitment term, the court expressly chose the "high term" over the "low term" due to the horrible nature of the crime. We view this as the court's acknowledgement of, and decision to refrain from, its power to exercise leniency.[4]
(4) We alternatively hold that no such exercise of discretion was required. The court in Andrew I., supra, 230 Cal.App.3d at pages 582-583, held that *1393 remand is not required for that purpose where the evidence established that the crime could only have been of the higher degree. As set forth below in part 2. of our discussion, there was sufficient evidence that appellant's actions were premeditated, willful and deliberate for purposes of first degree murder. Appellant contends that the evidence was insufficient to support that finding, but does not argue by way of analysis, discussion, or citation to authority, how the evidence can be viewed to support a finding of second degree murder. We therefore deem the issue waived (People v. Beltran (2000) 82 Cal.App.4th 693, 697, fn. 5 [98 Cal.Rptr.2d 730]) and, under Andrew I., hold that remand is not required because there was no evidence to support a finding other than first degree murder.[5]

2. There Was Sufficient Evidence of First Degree Murder

(5) Murder may be of the first or second degree. While both require malice aforethought, first degree murder requires willful, deliberate premeditation. (Pen. Code, §§ 187, 189.) Appellant contends there was insufficient evidence of such premeditation. In evaluating this claim, we apply the substantial evidence rule and view the evidence and all its attendant inferences in the light most favorable to the judgment. (People v. Perez (1992) 2 Cal.4th 1117, 1124 [9 Cal.Rptr.2d 577, 831 P.2d 1159].)
(6) Premeditation means the killing was "considered beforehand," and deliberation requires "careful thought and weighing of considerations for and against the proposed course of action." They may take place in a brief interval and the test is not time, but reflection. (People v. Memro (1995) 11 Cal.4th 786, 862-863 [47 Cal.Rptr.2d 219, 905 P.2d 1305].) Three types of evidence may reflect premeditation and deliberation: (1) evidence of planning activity by the defendant; (2) evidence of a motive or of a prior relationship with the victim; and (3) evidence that the manner of committing the crime suggests a preconceived plan. (People v. Mayfield (1997) 14 Cal.4th 668, 768 [60 Cal.Rptr.2d 1, 928 P.2d 485].)
Appellant was a member of the East Side Trece gang. A police gang expert testified and the juvenile court found that the murder was committed for the benefit of that gang. Appellant wore a hood, creating an inference that he did so to conceal his identity. He was armed when he rode up to the house and was heard to yell "we got him" after shooting the victim and riding away. The latter suggests that the shooting was the successful culmination of a prearranged plan. Taken as a whole, these facts are sufficient to support a finding of first degree murder based on deliberation and premeditation.

*1394 DISPOSITION
For the reasons set forth above, the juvenile court's wardship orders are affirmed.
Cooper, P. J., and Flier, J., concurred.
NOTES
[1] Although there was conflicting evidence, and appellant presented alibi witnesses, the only disputes on appeal concern whether appellant committed first or second degree murder. Accordingly, we do not discuss the evidentiary conflicts.
[2] Appellant did not expressly raise this issue by way of a separately headed argument in his brief that was supported by discussion and citation to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B).) Instead, it was raised almost as an aside as part of his argument concerning the juvenile court's obligation to make a finding of the degree of the crime. Respondent has addressed the issue, however, and we will therefore consider it.
[3] We also note that the prosecutor argued that it was undisputed that this was a premeditated and deliberate first degree murder and that the only issue to be decided was the identity of the shooter. When defense counsel began his argument, he agreed with that notion and never argued that a second degree murder had been committed. We asked for and received supplemental briefs from the parties on the issue of whether the finding of degree had been waived by this exchange. We conclude that defense counsel's statements were too ambiguous to constitute a waiver, but believe they bolster the conclusion that a crime divided by degrees was not alleged in the petition and therefore was not at issue at trial.
[4] These remarks could also be viewed as the trial court's attempt to make a finding of degree. Except under circumstances not present here, second degree murder is punishable by a term of 15 years to life. (Pen. Code, § 190, subds. (a), (b).) First degree murder is punishable by death, a life sentence without parole, or by a term of 25 years to life. (Pen. Code, § 190, subd. (a).) A sentence of death is not permitted for a minor (Pen. Code, § 190.5) and sentences of death or life without parole are permitted only when certain special circumstances are pleaded and proved (Pen. Code, § 190.2). Those special circumstances were not pleaded here. In short, if second degree murder were a consideration for the court, the only sentencing options available were 25 years to life if it found first degree murder or 15 years to life if it found second degree murder. Therefore, when the trial court spoke of a "high term" and a "low term," it is inferable that it meant first degree murder and second degree murder and was in fact making a finding and choosing between the two when it selected the "high term." We do not, however, base our decision on this possibility.
[5] Although we affirm, we stress the importance of trial courts making express findings of the degree of the offensepreferably by using, for example, "first degree," "second degree" and so forthto avoid any unnecessary confusion.