Filed 9/8/25  In re J.C. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B336389 (Super. Ct. No. EL0563A) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.C.,<br><br>    Defendant and Appellant. | |

J.C. appeals from an order adjudicating him a ward of the court (Welf. & Inst. Code,[1] § 602) after he pleaded no contest to first degree murder (Pen. Code, § 187, subd. (a)).  The juvenile court committed J.C. to a secure youth treatment facility (SYTF)

_____

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

for a baseline term of five years. On appeal, J.C. contends the juvenile court erred in committing him to an SYTF, the maximum term of confinement must be modified, the degree of murder was not specified and must be reduced to second degree murder, his precommitment custody credits were incorrect, and the restitution fine must be stricken. We modify the disposition order to correct the precommitment custody credits and strike the restitution fine. In all other respects, we affirm.

FACTS AND PROCEDURAL HISTORY[2]

In May 2022, J.C., M.E., and their cohorts committed a robbery at a marijuana farm. J.C., who was then 16 years old, and his older brother, S.C., were the youngest in the group. The group traveled from Los Angeles County to Riverside County and rented a home for one night for the robbery. Each was armed with a firearm. They wore masks and had zip ties and two-way radios.

Around 4:00 am, some of the perpetrators, including J.C., banged on the front door of the main trailer and announced they were "DEA agents" before forcing entry. One of the participants hit a resident in the face with his rifle and held him at gunpoint. Another participant forced another resident to the living room floor and attempted to zip tie his hands. Two participants confronted a third resident and one of them hit the resident's head with a firearm.

M.E. was shot in the thigh by one of his coparticipants. The bullet hit his femoral artery. After the gunshot, J.C. ran into a bedroom to retrieve a PlayStation 4 gaming console before

---

[2] Because J.C. pleaded no contest, the facts are taken from the probation reports.

fleeing the scene of the crime. The participants left in their vehicles, and M.E. died on the drive back to the rental home.

The police interviewed Edgar Gonzalez-Navarro, who admitted his participation in the robbery. He said J.C. was in the main trailer with him, but left the room to help another coparticipant. He then heard "several gunshots." When Gonzalez-Navarro returned to the car, J.C. said he " 'let some rounds off.' " Gonzalez-Navarro dumped M.E.'s body off the side of a road.

After the robbery, J.C. sold the stolen PlayStation 4 to a third party through an online platform. Law enforcement reviewed J.C. and S.C.'s social media accounts. There were messages between J.C. and S.C. about the sale of the PlayStation 4. Based on information from these accounts, a gang enforcement officer believed that J.C. and S.C. were members of the Drew Street clique within the Avenues criminal street gang.

J.C. and S.C. were arrested at their home. While S.C. was in the holding cell, he identified himself as an associate of the Avenues Street gang Drew Street clique. He said he and J.C. were recruited for the robbery. S.C. was armed with a pistol and forced entry into a " 'little cabin' " on the property where a mother and four children were inside. J.C., M.E., Gonzalez-Navarro, and another person went to the main trailer. There was an altercation, and two participants fired their weapons. S.C. said " 'one of the fools shot, and they thought they shot at us, and I guess they hit the homie.' " Gonzalez-Navarro had the idea to dump M.E.'s body. S.C. and J.C. left after the robbery to return to Los Angeles County. J.C. later told S.C. that he shot one round during the altercation.

The section 602 petition alleged that J.C. willfully and unlawfully committed murder (Pen. Code, § 187, subd. (a); count

3

1), was a principal in that crime and that someone who was a principal personally and intentionally discharged a firearm and proximately cause great bodily injury and death (Pen. Code § 12022.53, subds. (d) & (e)).  The petition also alleged J.C. committed robbery of an inhabited dwelling (Pen. Code, § 211; count 2), burglary (Pen. Code, § 459; count 3), and robbery (Pen. Code, § 211; count 4).  For counts 2 through 4, it was alleged that J.C. committed the crimes for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(B)).  The juvenile court denied the district attorney's motion to transfer J.C. to an adult criminal court.

J.C. admitted a violation of Penal Code section 187, subdivision (a), a felony.  The juvenile court dismissed the remaining counts and the firearm and gang allegations.  Thereafter, the case was transferred from Riverside County Superior Court to Los Angeles County Superior Court.

At the disposition hearing, the juvenile court declared J.C. to be a ward of the court under section 602 and ordered him committed to an SYTF with a baseline term of five years and a maximum confinement term of 25 years to life.  The court ordered J.C. to pay victim restitution and a restitution fine of $100.

## DISCUSSION

### SYTF

J.C. contends the juvenile court erred in committing him to an SYTF because the evidence did not support its finding that an SYTF met his needs.  We disagree.

" ' "We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision." [Citation.]  " '[D]iscretion is abused whenever the court exceeds the bounds of all reason, all of the circumstances being considered.' " [Citation.]  We will not disturb the juvenile

4

court's findings when there is substantial evidence to support them. [Citation.] " 'In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.' " ' [Citation.] 'A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence.' " (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.)

Pursuant to section 875, subdivision (a), a court may order a ward who is 14 years of age or older to be committed to an SYTF if they meet the following criteria: (1) They are found to be a ward of the court based on an offense listed in Section 707, subdivision (b) that was committed when they were 14 years of age or older, (2) the adjudication is their most recent offense, and (3) the court has made a finding on the record that a "less restrictive, alternative disposition" for the ward is unsuitable.

The third criteria is at issue here. In making this finding, the juvenile court "shall consider all relevant and material evidence, including the recommendations of counsel, the probation department, and any other agency . . . . The court shall additionally make its determination based on all of the following criteria: [¶] (A) The severity of the offense . . . including the ward's role in the offense, the ward's behavior, and harm done to victims. [¶] (B) The ward's previous delinquent history . . . . [¶] (C) Whether the programming, treatment, and education offered and provided in a[n] [SYTF] is appropriate to meet the treatment and security needs of the ward. [¶] (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court. [¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation,

gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a[n] [SYTF]." (§ 875, subd. (a)(3)(A)–(E).)

Section 875 does not require equal weight be given to each of the five criteria. (Compare *Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 186 [the weight given to each factor under section 707 is within the juvenile court's discretion, as nothing in the statute indicates the court must give equal weight].)

The juvenile court here considered each of the five criteria under section 875, subdivision (a)(3). It acknowledged the severity of the offense, J.C.'s role, and the harm caused by his conduct. It found SYTF programming and treatment was appropriate, and that a less restrictive alternative was unsuitable. It also found that J.C. did not have a prior delinquent history with the court and that nothing regarding J.C.'s age, developmental maturity, mental health, special needs, gender/sexual orientation or otherwise would affect the safety or suitability of an SYTF.

Substantial evidence supports the court's finding that SYTF placement was appropriate because of the severity of the offense. J.C. was involved in an armed robbery, M.E. was shot in the leg and died, and J.C. fired one round from his weapon. The court emphasized that "there's no more serious charge than this" and found, in reference to the murder, the "extent of the harm is incalculable." As to J.C.'s role and behavior in the crime, the court noted that he wore a mask, was armed, and left Los Angeles County for a "very nefarious purpose." The court also considered the planned nature of the robbery, that there were children on the property, and that one of the coparticipants was shot, died, and "dump[ed] . . . on the side of the road somewhere."

6

Substantial evidence also supports the court's finding that an SYTF was the "only reasonable, appropriate alternative" and that less restrictive alternatives were unsuitable. Probation recommended SYTF commitment, reporting that the SYTF will "work with the minor's . . . individual needs and develop a programming centered around what would best meet his rehabilitative goals." Probation noted J.C. was "in need of intensive services and should be considered a potentially deadly and high risk threat to the community." Probation also described the services an SYTF would provide J.C., including therapy, college level courses, and mentoring that would "appropriately meet the minor's treatment and security needs."

Moreover, the juvenile court found other less restrictive alternatives were unsuitable because they "would not be in the best interest of the community" and "would lack services needed to achieve the rehabilitative goals that will support [J.C.'s] eventual integration back into the community." With respect to Dorothy Kirby Center and Rites of Passage, J.C. was rejected for these alternative placements, in part, because he had already earned his high school diploma and "his current reported symptoms and behaviors do not warrant placement at [Dorothy Kirby Center]." Probation noted that an SYTF "would be [the] appropriate setting to address [J.C.'s] needs given his age and his high school graduate status." The juvenile court found alternative placements unsuitable, noting that it was also "not inclined . . . to send him directly to Pine Grove," a youth conservation camp. The court also found the Dorothy Kirby Center was not "appropriate due to the nature of the issues that were presented here that [J.C.] needs to have treated before he is able to be released," and that camp was unsuitable because it did not "provide the therapeutic part of a program that . . . [J.C.]

7

needs." Because these findings are supported by substantial evidence, there was no abuse of discretion.

J.C. also contends the juvenile court abused its discretion because it did not properly consider that the Board of State and Community Corrections (the Board) found the Barry J. Nidorf SYTF out of compliance with the minimum standards for juvenile facilities and not suitable for confinement pursuant to section 209, subdivisions (a)(4) and (d). He also relies on dicta in *In re Carlos J.* (2018) 22 Cal.App.5th 1, 14, to argue that the prosecution did not counter the Board's finding.

We are not persuaded. The commitment order did not specify that J.C. would be committed to the Nidorf facility. But even if it did, the Board did not state this facility was unavailable for placement. Instead, the Board's notice states that "*commencing 60 days following this notice* [dated February 16, 2024] or *by April 16, 2024* the facilities shall not be used for the confinement of juveniles until the Board finds, after reinspection of the facilities, that the conditions that rendered the facility unsuitable have been remedied, and the facility is a suitable place for confinement of juveniles." (Italics added, underlining omitted.) Thus, the Board's notice does not state Nidorf was unavailable for placement before April 16, and it indicates the facility could be reinspected and deemed suitable for confinement at a future date.

In considering the appropriateness of an SYTF, the juvenile court expressly considered all the statutory criteria under section 875, subdivision (a)(3) and found that no lesser alternative dispositions were suitable. There was no abuse of discretion.

*Maximum time of confinement*

J.C. contends the juvenile court erred in imposing a maximum term of confinement that exceeded his 25th birthday.

8

The Attorney General contends the disposition order should be clarified to set a maximum term of confinement to when J.C. reaches 25 years old.  We conclude the order was correct and no modification is necessary.

In declaring J.C. a ward of the court, the juvenile court stated that he "is committed based upon the most recent offense listed in . . . section 707 [subdivision (b)] which is [Penal Code section] 187 with a maximum term of 25 years to life.  However, . . . because [J.C.] is a minor, 25 years to life does not apply."  In selecting the baseline term, the court "deviate[d] downward to five years for the baseline term" based in part on J.C.'s progress in the programming he was offered and graduation from high school.  (Cal. Rules of Court,[3] rule 5.806.)  The commitment order and minute order from the disposition hearing reflect the court selected five years for the baseline term and 25 years to life for the maximum period of confinement.

Pursuant to section 875, the juvenile court, in making its order of commitment to an SYTF, must set a baseline term for confinement based on the "most serious recent offense for which the ward has been adjudicated."  (§ 875, subd. (b)(1).)  Upon expiration of the baseline term, the court must discharge the ward to probation supervision absent certain findings.  (*Id.*, subd. (e)(3).)

The court shall "additionally set a maximum term of confinement . . . based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation.  The maximum term of confinement shall

---

[3] Further unspecified rule references are to the California Rules of Court.

9

represent the *longest term of confinement in a facility that the ward may serve* subject to the following: [¶] (A) A ward committed to a secure youth treatment facility under this section shall not be held in secure confinement beyond 23 years of age, or two years from the date of the commitment, whichever occurs later. However, if the ward has been committed to a secure youth treatment facility based on adjudication for an offense or offenses for which the ward, if convicted in adult criminal court, would face an aggregate sentence of seven or more years, the ward shall not be held in secure confinement beyond 25 years of age, or two years from the date of commitment, whichever occurs later. [¶] (B) The maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses. . . . [¶] (C) Precommitment credits for time served must be applied against the maximum term of confinement." (§ 875, subd. (c)(1), italics added.)

The parties suggest that the maximum term of confinement should be set to when J.C. turns 25 years old. We disagree. Recently, in *In re L.H.* (2025) 110 Cal.App.5th 591, 606 (*L.H.*), our colleagues in the First District concluded that the "age limits found in section 875, subdivision (c)(1)(A) constitute a cap on the length of a ward's physical confinement *separate* from the maximum term of confinement set by the juvenile court in its order of commitment." (See also *In re M.B.* (2024) 99 Cal.App.5th 435, 450 [maximum term of confinement set at 22 years, which was beyond the statutory age cap].) Jurisdictional age limits "should not be construed as limiting the length of the maximum term of confinement." (*L.H.*, at p. 601.) If we were to interpret section 875 to limit the maximum term of confinement by jurisdictional age limits, there could be instances where, after the

10

application of precommitment credits for time served, the "maximum term of confinement" is less than the baseline term, despite no intention by the court to do so. For instance, if a minor is 18 years old at the time of the commitment order, the baseline term is six years, the minor is awarded 550 days of precommitment credits, and the minor's maximum time of confinement is set at the jurisdictional age limit (seven years until minor is 25 years old), the result would be a confinement term shorter than the baseline term once precommitment credits are applied against the maximum term of confinement (§ 875, subd. (c)(1)). In our view, such an interpretation of "maximum term of confinement" in section 875 "would not render it reasonable, fair and harmonious with the purpose of the statute" to rehabilitate the juvenile and protect the public. (*L.H.*, at pp. 605–606.)

In setting the maximum term of confinement here, the juvenile court correctly treated the maximum term of confinement separate from the jurisdiction age cap. The court set the maximum term of confinement at 25 years to life, but it also correctly acknowledged that this term will be "subject to" the jurisdictional age limit. (§ 875, subd. (c)(1); *L.H.*, *supra*, 110 Cal.App.5th at p. 600 [interpreting "subject to" in section 875, subd. (c)(1) "as more broadly governing the ward's actual length of confinement instead of the juvenile court's discretion to set a maximum term of confinement"].) We will not disturb the order setting the maximum term of confinement.

### *Degree of murder*

J.C. contends the juvenile court failed to specify the degree of murder and must be deemed second degree murder pursuant to Penal Code section 1192 and rule 5.778(f)(9). We conclude otherwise.

11

Penal Code section 1192 provides that upon "a plea of guilty . . . of a crime . . . distinguished or divided into degrees, the court must, before passing sentence, determine the degree. Upon the failure of the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." (Pen. Code, § 1192.) Penal Code section 1192 is applicable to juvenile ward proceedings. (*In re Andrew I.* (1991) 230 Cal.App.3d 572, 580–581 (*Andrew I.*).) In the context of section 602 proceedings, on an admission or plea of no contest, the court must make a finding of "the degree of the offense and whether it would be a misdemeanor or felony had the offense been committed by an adult." (Rule 5.778(f)(9), see also rule 5.780(e)(5) [if the court finds, in a § 602 matter, the allegations of a petition true, the court must make findings on the "degree of the offense and whether it would be a misdemeanor or felony"].)

The court's finding as to the degree may be satisfied in two ways: "(1) by a finding that specifically refers to the degree of the crime by its statutory numerical designation; and (2) *by findings that encompass the statutory factual predicates of the degree of the crime.*" (*In re C.R.* (2008) 168 Cal.App.4th 1387, 1391, italics added.) The court may make this finding at the end of a jurisdiction hearing or during the disposition hearing. (Rule 5.778(f)(9); *Andrew I.*, *supra*, 230 Cal.App.3d at p. 581.)

In *People v. Mendoza* (2000) 23 Cal.4th 896 (*Mendoza*), our Supreme Court considered the applicability of a similar statute, Penal Code section 1157, where the defendants were charged with special circumstances murder because the defendants allegedly committed murder while they were engaged in committing robbery and burglary (Pen. Code, § 190.2, subd. (a)(17)). (*Mendoza*, at p. 900.) Because the prosecution's only

murder theory at trial was that the defendants shot and killed the victim during the perpetration of a robbery and burglary, the juries were instructed on first degree felony murder and did not receive instruction or verdict forms on second degree murder or any other form of homicide. (*Id.* at pp. 901–902, 904–906.) The juries found the defendants guilty of murder, robbery, and burglary and found the special circumstances true. (*Id.* at pp. 903–904, 907.) Our high court held that Penal Code section 1157 did not apply because the defendants were convicted of felony murder, which was deemed to be first degree murder as a matter of law under Penal Code section 189. (*Mendoza*, at p. 908.)

In *Sanchez v. Superior Court* (2022) 102 Cal.App.4th 1266, 1273, we applied the rationale of *Mendoza* to conclude that Penal Code section 1192 did not apply to a guilty plea where the indictment specifically charged first degree murder. There, a defendant sought a writ "to compel the trial court to accept his guilty plea to murder without specifying its degree and to conduct a hearing under section 1192 to determine the degree of the murder." (*Sanchez*, at p. 1268.) We denied the writ and concluded that "[w]hen the language of the charge can only be first degree murder, an accusatory pleading does not charge a crime 'distinguished or divided into degrees' and, therefore, section 1192 does not apply." (*Id.* at pp. 1269–1270.) We also cautioned against a "strict and literal interpretation" of degree-setting statutes, "where neither logic nor the accusatory pleading leave any doubt as to the degree of the murder charged." (*Id.* at p. 1273.)

Here, like the indictment in *Mendoza*, *supra*, 23 Cal.4th at page 900, the juvenile petition alleged murder under Penal Code section 187, subdivision (a), but did not specify a degree of

murder.  Nevertheless, we conclude the record here leaves no doubt that J.C. admitted to committing first degree murder.

At the jurisdictional hearing, the prosecutor clarified before J.C.'s admission that "this is a first-degree murder."  The juvenile court also admonished J.C. that "the law says . . . 25 to life is the maximum confinement time . . . . [¶] Do you understand?"  J.C. responded, "Yes" and admitted the murder offense.  At the disposition hearing, the court made findings establishing that the murder was committed during the perpetration of a robbery.  The court stated that J.C. "was participating . . . with a group" with zip ties, guns, masks, and a truck, and "it looks like he was going to rob somebody."  The court continued to state that "during this attempted home-invasion robbery, one of his confederates got shot and . . . bled out."  "So based upon what we know he did do in this case, leaving aside whether his shot, actually, was the bullet that killed [M.E.], or not, he did admit a murder.  He certainly *participated in the events that caused this event to happen*."  (Italics added.)  The court committed J.C. to an SYTF based on his plea to murder "which is [Penal Code section] 187 *with a maximum term of 25 years to life*."  (Italics added.)

Based on these findings, we conclude the juvenile court sufficiently described a murder committed in the perpetration of robbery that is first degree murder as a matter of law.  (Pen. Code, § 189, subd. (a)); *Andrew I.*, *supra*, 230 Cal.App.3d at pp. 581–582 [court's finding at the disposition hearing that minor committed a " 'residential burglary' " was a sufficient characterization of the offense "to support a first degree burglary finding as required by statute"]; *In re C.R.*, *supra*, 168 Cal.App.4th at p. 1391.)

14

*Custody credits*

J.C. contends and the Attorney General concedes that the juvenile court should have awarded 548 days of precommitment credits, and not 535 days. We agree.

A minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the same offense. (§ 726; *In re Eric J.* (1979) 25 Cal.3d 522, 535–536.) A minor is entitled to credit for the time spent in custody before the disposition order is entered. (*In re Eric J.*, at pp. 533–536; *People v. Bravo* (1990) 219 Cal.App.3d 729, 735.) Here, J.C. was arrested on September 7, 2022, and remained detained to the day of disposition on March 8, 2024. That is 548 days. Accordingly, the commitment and disposition minute order shall be modified to reflect 548 days of precommitment custody credits.

*Restitution fine*

J.C. contends the restitution fine should be stricken pursuant to the recent amendment to section 730.6. We agree.

Here, the juvenile court imposed a $100 restitution fine. At the time of J.C.'s disposition, the restitution fine was mandatory. (Former § 730.6, subd. (a)(2)(A), (b)(1); Stats. 2015, ch. 131, § 1.) However, effective January 1, 2025, the Legislature passed Assembly Bill No. 1186 (2023–2024 Reg. Sess.), which amended section 730.6 to prohibit a court from "impos[ing] a separate and additional restitution fine against a minor found to be a person described in Section 602." (§ 730.6, subd. (a)(2), as amended by Stats. 2024, ch. 805, § 6.)

An adult or juvenile offender is generally entitled to benefit from amendments that become effective while their case is on appeal and not yet final. (*People v. Vieira* (2005) 35 Cal.4th 264, 305 [applying a revised version of the statute in setting a

15

restitution fine]; *In re N.D.* (2008) 167 Cal.App.4th 885, 891 [rule of retroactivity applies to juvenile delinquency judgments].) "[W]here the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (*In re Estrada* (1965) 63 Cal.2d 740, 748.) Because imposing a restitution fine constitutes "punishment," we conclude section 730.6 operates retroactively and precludes imposition of a restitution fine here. (*People v. Allen* (2019) 41 Cal.App.5th 312, 321.) Therefore, the $100 restitution fine should be stricken.

## DISPOSITION

The commitment order and disposition minute order are modified to award 548 days of precommitment custody credit and to strike the $100 restitution fine. The juvenile court is directed to prepare the amended orders to reflect these modifications. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


CODY, J.

16

Christina L. Hill, Judge

Superior Court County of Los Angeles

_____

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.