Filed 6/10/13  In re F.R. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re F.R., a Person Coming Under the Juvenile Court Law. | B239927 (Los Angeles County Super. Ct. No. GJ28155) |
| THE PEOPLE, Plaintiff and Respondent, v. F.R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Robert Leventer, Juvenile Court Referee.  Affirmed as modified.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe J. Leszkay and Gary A Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

F.R., appellant, born in 1994, appeals from the order of wardship (Welf. & Inst. Code, § 602) entered after the juvenile court sustained the petition alleging he committed second degree robbery (Pen. Code, § 211)[1] and felony assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), which offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The court ordered appellant placed in a camp-community placement program for nine months; set his maximum term of confinement at 29 years and eight months; and awarded him 109 days predisposition custody credit.

Appellant contends the evidence is insufficient to support the true findings on the robbery and assault charges and on the gang-related enhancements. He contends his maximum confinement term was miscalculated, because the term on the assault charge should have been stayed (§ 654) and the gang enhancement, which is a "status" enhancement, should have been applied only once. He further contends he is entitled to an additional 93 days of custody credit.

The People concede the term on the assault charge should have been stayed and contend the maximum confinement term should be modified to 18 years and four months. The People also contend that appellant failed to provide an adequate record to address his custody credit claim. In reply, appellant acknowledges the record is inconclusive and indicates his intent to pursue his claim before the juvenile court.

Based on our review of the record and applicable law, we modify the order to reflect the term on the assault charge is stayed and the maximum confinement term is 18 years and four months. In all other respects, we affirm the order.

## FACTS

### Earlier Petitions

On September 27, 2010, the juvenile court found true the allegations of the petition filed April 19, 2010, that appellant committed felony battery for the benefit of a

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

gang (§§ 243, subd. (d), 186.22, subd. (b)(1)(B))[2] and the allegations of the petition filed May 28, 2010, that appellant possessed for sale ecstasy, a controlled substance (Health & Saf. Code, § 11378). The court sustained both petitions and declared appellant a ward of the court. Appellant was placed home on probation for six months. The court calculated his maximum confinement term as nine years on the felony battery offense and gang enhancement, plus eight months for the possession for sale of ecstasy offense.

### Current Petition

The petition filed November 16, 2011, alleged that appellant committed a second degree robbery for the benefit of a gang (§§ 211, 186.22, subd.(b)(1)(C); count 1) and felony assault by means likely to produce great bodily injury for the benefit of a gang (§§ 245, subd. (a)(1), 186.22, subd. (b)(1)(B); count 2). The victim in both counts was C.M.

### Evidence Presented at the Adjudication Hearing

On November 10, 2011, about 9 p.m., following a high school football game at the Rose Bowl in Pasadena, C.M., who was in the 10th grade, was walking with his sister along with his girlfriend and her sister, when they decided to see who could reach home first. They then ran off in different directions.

C.M. ran past appellant who was with eight or nine males across the street. He knew appellant from school as "Paco" and was aware that appellant was in a gang called "W.C.S.," the Wicked Chronic Smokers.

Becoming tired, C.M. started walking. He looked back and saw appellant running toward him. While standing in front of C.M., appellant asked where he was from. C.M. responded, "I am from nowhere. I don't bang." When appellant asked if C.M. was "from Summits," C.M. replied, "No."

---

[2] As originally filed on April 19, 2010, the petition alleged in counts 1 and 2 that appellant committed the crime of assault by means likely to produce great bodily injury (§ 245, subd.(a)(1)) for the benefit of a gang (§ 186.22, subd. (b)(1)(B)). At the hearing, the court dismissed both counts and added as count 3 the allegation that appellant committed the crime of felony battery (§ 243, subd. (d)) for the benefit of a gang (§ 186.22, subd. (b)(1)(B)).

Appellant punched C.M. above his left eyebrow, which caused bleeding. C.M. became dizzy and closed his eyes for five seconds but did not fall. Appellant took C.M.'s wallet from his sweater's left pocket, which contained about seven dollars, and walked away with his companions. C.M. yelled for the return of his wallet. Appellant threw it on the ground. When C.M. retrieved the wallet, the money was missing.

On November 14, 2011, Pasadena Police Officer David Garcia noticed a one-inch cut and bruising over C.M.'s left eye.

In a tape-recorded police interview, appellant indicated he was from the W.C.S. gang and he was known as "Paco." He explained that prior to his confrontation with C.M., a group of males had tried to assault him outside the Rose Bowl but he got away. Later, appellant was walking with several people when one of them described the male who ran across the street as someone who had tried to assault appellant earlier.

Appellant ran up to that male and asked, "Who you with?" The male responded he was with no one and pushed appellant, who then punched him once in the face. Appellant denied taking anything from the male.

At the adjudication hearing, C.M. had a small linear scar where appellant had struck him. He admitted he was scared during the incident, because he was by himself. C.M. denied he swung at or pushed appellant beforehand or that he had any altercation with appellant earlier that night.

Oscar C. testified he had been friends with appellant, whom he knew as Paco, for years but did not know whether appellant was a W.C.S. gang member. Oscar C. explained he was walking with appellant, M.E., and two others when a male walked toward them, stopped, looked directly at appellant, and ran. Someone from the group yelled that the male was the person who had "jumped" appellant earlier. Appellant, followed by the others, ran after the male. After appellant caught up with him, the two argued. The male pushed appellant and appellant then punched the male in the face. The male stumbled, stepped backwards, and crossed the street. Appellant and his group walked away. Oscar C. never saw appellant reach into the male's sweatshirt.

4

M.E., appellant's friend, testified she saw appellant and a male swing at each other. She saw someone tumble to the ground on his knee but did not see appellant or anyone pushing or hitting anybody. She never saw appellant grab anything from the male's clothing.

Pasadena Police Officer Carlo Montiglio, the People's gang expert, testified that appellant was a W.C.S. gang member and his moniker was Paco. The Summit Street Smokers gang was a rival of W.C.S. Montiglio opined that appellant committed the assault and robbery crimes for the benefit of W.C.S. He explained that a gang member would ask "where are you from" to ascertain a person's rival gang and to terrorize him. The questions "where you from" and "who you with" are not necessarily different in this context, because both were used to determine whether the person addressed was a rival gang member.

During the police interview, appellant indicated he thought the victim was part of the group that had assaulted him earlier. In confronting him, appellant specifically asked, "Are you with the Summits?" Officer Montiglio opined appellant's assault of the victim was a "classic case of gang retaliation," because appellant needed to assault his rival to avoid losing face and to enhance his and his gang's reputations and to demean the rival gang. Montiglio testified that by assaulting the victim, who knew appellant's gang status and moniker, appellant furthered his gang's reputation and created an atmosphere in the community which would allow the gang to commit crimes without fear of law enforcement involvement.

Montiglio explained that when a gang member commits a robbery, the money could be used to further gang activities, such as the purchase of narcotics or weapons. Additionally, W.C.B. committed "licks," the "street term for robberies, to establish [W.C.B.'s] violent nature."

### Adjudication and Disposition

The juvenile court sustained the petition. The court found true the allegations of the petition and the assault offense to be a felony. The court also found the assault and robbery to be "gang-related" because appellant committed the crimes for "revenge on a

5

gang-related jumping that occurred that evening." The court ordered appellant to remain a ward of the court; and removed custody of appellant from his parents. The court placed appellant in the camp-community placement program for nine months; calculated the maximum confinement period to be 29 years and eight months; and awarded appellant 109 days predisposition credit.

**DISCUSSION**

**I.     Assault, Robbery, and Gang True Findings Supported by Substantial Evidence**

Appellant contends the assault, robbery and gang true findings are unsupported by the evidence and the order therefore must be reversed. The evidence is in fact substantial.

**A.     *Standard of Review***

"Where the juvenile court has sustained a petition, an attack on the sufficiency of the evidence to support that ruling is governed by the substantial evidence rule. [Citation.] 'The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. The court must view the entire record in the light most favorable to the judgment (order) to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the minor guilty beyond a reasonable doubt.' [Citation.]" (*In re Andrew I.* (1991) 230 Cal.App.3d 572, 577.)

Similarly, "[i]n considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also

6

reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.)

## B.    Assault Count

Appellant contends his attack on C.M. did not rise to a level of an assault likely to produce great bodily injury, because his punch only caused some bleeding. (See *People v. Young* (2005) 34 Cal.4th 1149, 1210 (*Young*) [battery based on punch causing inmate to bleed from nose and mouth].) Appellant further contends substantial evidence establishes he simply punched C.M., who shoved him first, in self-defense, which negates his culpability for an assaultive crime. His contentions are without merit.

"[W]hether the victim in fact suffers any harm is immaterial" to the commission of assault by "'any means of force *likely* to produce great bodily injury'" and a conviction of such crime may be based on "the use of hands or fists alone." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028, italics added.) "Great bodily injury is significant or substantial injury. [Citation.] Permanent or protracted impairment, disfigurement, or loss of function, however, is not required." (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1087.)

In this instance, substantial evidence supports the juvenile court's finding that appellant's punch to C.M.'s face was likely to produce great bodily injury. The blow was hard enough to cause C.M. to sustain a one-inch cut, which bled, and bruising over one eye and to become dizzy. (See *In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161 [rejecting contention that, as a matter of law, one blow to face could not have been likely to cause great bodily injury].) Further, to entertain appellant's self-defense claim, we would have to reweigh the evidence and reevaluate the credibility of witnesses, which functions are beyond the scope of our review.

## C.    Robbery Count

Appellant contends the true finding on the robbery count is not supported by sufficient evidence, because C.M.'s testimony suggested appellant took the money from C.M.'s wallet, but "there was also evidence to suggest that C.M. was not telling the entire

truth of what happened . . . , and . . . additional evidence to suggest that appellant did not in fact take anything from C.M." He further contends the evidence of robbery was deficient, because "the use of force or fear was exhibited prior to any evidence of the formation of intent to take." These contentions lack merit.

Initially, we point out, as appellant acknowledges, the testimony of a single witness is sufficient to support a true finding on the robbery count. We are foreclosed from reevaluating C.M.'s credibility and reweighing the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27; see also, *Young, supra*, 34 Cal.4th at p. 1181.) C.M.'s testimony that the money inside his wallet was gone after appellant stole the wallet therefore constitutes substantial evidence that appellant stole C.M.'s money.

Contrary to appellant's claim, substantial evidence exists that he used force and fear with the intent to steal from C.M. "To support a robbery conviction, the evidence must show that the requisite intent to steal arose either *before or during* the commission of the act of force. [Citation.]" (*People v. Marshall* (1997) 15 Cal.4th 1, 34, italics added.) "'Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense.' [Citation.]" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1365.)

The evidence established that appellant believed C.M. was a member of the rival Summit Street Smokers gang, which had attacked appellant earlier that evening, and supports the inference that appellant punched C.M. in retaliation. The evidence, however, supports the further inference that appellant also punched C.M. to make it easier to rob him by making him dizzy and fearful. A street robbery was a primary activity of appellant's W.C.S. gang. As the juvenile court explained, "This is one continuous transaction that takes place in a matter of seconds. The money was taken during the use of force and threat of force. I don't think the force ended just when [appellant] punched [C.M.] in the eye."

### D.    Gang Enhancement

Appellant contends the gang enhancement true findings are unsupported by the evidence, because no evidence was presented that when appellant "robbed or assaulted

8

C.M. that he was in the presence of any other members of W.C.S.," and thus, he was not "in service to other gang members at the time of the underlying offenses."

The gang enhancement applies to "any person who is convicted of a felony committed for the benefit of, at the direction of, *or* in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1), italics added.) The three ways in which the felony may be committed are phased in the disjunctive. Substantial evidence supports the inference that appellant committed the assault and robbery "for the benefit of . . . [the] criminal street gang," W.C.S. Whether any other W.C.S. gang member was present when appellant assaulted and robbed C.M., therefore, is of no moment.

Appellant's reliance is misplaced on the phrase "with the specific intent to promote, further, or assist in any criminal conduct by gang members" for a contrary conclusion. He argues the significance of this language is other gang members must be present at the time the perpetrator commits the underlying crime(s) to establish the gang enhancement. The law is otherwise.

In *People v. Rodriguez* (2012) 55 Cal.4th 1125, our Supreme Court concluded although a gang member acting alone cannot be convicted of the gang participation offense (§ 186.22, subd. (a)), that gang member could still be subject to having his felony conviction enhanced by the gang enhancement (§ 186.22, subd. (b)(1)).

The Court explained, "Section 186.22(a) and section 186.22(b)(1) strike at different things. The enhancement under section 186.22(b)(1) punishes gang-related conduct, i.e., felonies committed with the specific intent to benefit, further, or promote the gang. [Citation.] However, '[n]ot every crime committed by gang members is related to a gang.' [Citation.] As such, with section 186.22(a), the Legislature sought to punish gang members who acted *in concert* with other gang members in committing a felony regardless of whether such felony was gang related. [Citation.]" (*People v. Rodriguez, supra*, 55 Cal.4th at p. 1138.) Although excluded from gang participation offense culpability, "[a] lone gang member who commits a felony will not go unpunished; he or she will be convicted of the underlying felony. Further, such a gang

member would not be protected from having that felony enhanced by section 186.22(b)(1), which applies to 'any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . .'" (*Id.* at pp. 1138–1139.)

## II.     Modification of Maximum Confinement Term Mandated

Appellant contends the maximum confinement term cannot stand, because the juvenile court should have stayed the confinement term for the assault offense and the gang enhancement should have been applied only once, because it is a status enhancement. The People concede the confinement term for the assault offense should be stayed but disagree the gang enhancement is a status enhancement. The People contend the maximum confinement term should be modified from 29 years and eight months to 18 years and four months, because the juvenile court erred in imposing the four-year upper term for the felony battery plus five years for the attendant gang enhancement instead of one year, or one-third the three-year middle term, plus one year and eight months, or one-third the five-year term, for that gang enhancement. We concur with the People.

### A.     *Calculation of Maximum Confinement Term by Juvenile Court*

The juvenile court set appellant's maximum term of confinement at 29 years and eight months. The maximum confinement term on the current petition was calculated as follows: The juvenile court imposed the five-year upper term for the robbery offense, plus 10 years for the related gang enhancement, and one year, or one-third the three-year middle term, for the assault offense, plus four years for the related gang enhancement. For the earlier petitions, the court imposed the four-year upper term for the felony battery offense, plus five years for the related gang enhancement, and eight months, or one-third the two-year middle term, for the drug-related offense.

### B.     *Stay of Assault Confinement Term Pursuant to Section 654*

Appellant contends, and the People concede, the confinement term for the assault offense, which includes the attendant gang enhancement, must be stayed pursuant to the

multiple punishment bar of section 654.  We agree.  The act of force used to commit the assault was the same force used to commit the robbery.  (See *People v. Flowers* (1982) 132 Cal.App.3d 584, 588–590.)

### C. *Gang Enhancement Proper as to Both Assault and Robbery Offenses*

Appellant contends the gang enhancements "look more like status enhancements and less like conduct enhancements," because "these enhancements speak not to the manner in which appellant carried out the [assault and robbery offenses] but rather to his status as a member of the W.C.S. [gang,]" and thus, the gang enhancement should have been applied only once.  We disagree.

"Sentence enhancements are generally of two types:  those which go to the nature or status of the offender, and those which go to the nature or circumstances of the offense.  [Citation.]  An enhancement which is based on the defendant's conduct in committing the charged offense, such as the personal use of a weapon or the infliction of great bodily harm, is imposed on the count to which it applies.  [Citation.]  Enhancements based on prior convictions are status enhancements.  Because they are related to the status of the offender, rather than the manner of commission of a crime, they are applied only once, in arriving at an aggregate sentence.  [Citations.]"  (*People v. Edwards* (2011) 195 Cal.App.4th 1051, 1057, fn. omitted; see also *People v. Coker* (2004) 120 Cal.App.4th 581, 587 [Status enhancements are added to reach final term rather than to each count].)

Appellant misapprehends the scope of the gang enhancement, which applies to "any person," *not* just a gang member, "who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).)  Accordingly, the gang enhancement is not a "status enhancement," because gang membership of the perpetrator is not an element.

### D. *Proper Maximum Confinement Term*

On the current petition, the juvenile court correctly calculated the maximum confinement term for the assault and robbery offenses and their attendant gang

enhancements as 20 years, i.e., the five-year upper term for the robbery offense (§ 211), plus ten years for the gang enhancement (§ 186.22, subd. (b)(1)(C)), and one year, or one-third the three year middle term, for the assault offense (§ 245, subd. (a)(1)), plus four years for the gang enhancement (§ 186.22, subd. (b)(1)(A)).[3] However, as discussed above, the term on the assault offense and the related gang enhancement must be stayed.

As for the two earlier petitions, the court miscalculated the confinement term as nine years and eight months, i.e., the four-year upper term for the felony battery offense, plus five years for the gang enhancement, and eight months, or one-third the two-year middle term, for the drug-related offense. Eight months is proper for the drug-related offense, but the court should have imposed a one-year term, or one-third the three-year middle term, for the battery offense, plus one year and eight months, or one-third the five-year term, for the gang enhancement. (See §§ 243, subd. (d), 1170.1, subd. (a).)

In sum, the proper maximum confinement term is 18 years, plus four months, i.e., the five-year upper term for the robbery, plus ten years for the related gang enhancement; one year for the felony battery, plus one year and eight months for the gang enhancement; and eight months for the drug-related offense. The order must be so modified.

## III.    Custody Credit Claim Not Cognizable on Appeal for Lack of Adequate Record

It appears the juvenile court awarded appellant 109 days of predisposition custody credit based on the date of his arrest on November 14, 2011, for the current offenses through March 1, 2012, the date of the disposition hearing on the petition. Appellant contends this credit must be increased by 93 days, because "[i]t appears from the Clerk's Transcript that [he] was ordered into custody on April 15, 2010 [on the initial petition] and was not released until a subsequent preadjudication hearing held on July 16, 2010."

---

[3]    The court properly imposed the four-year gang enhancement (§ 186.22, subd. (b)(1)(A)) instead of the alleged five-year gang enhancement (§ 186.22, subd. (b)(1)(B)), because assault by means likely to cause great bodily injury is not a serious felony (see *People v. Rodriguez* (1998) 17 Cal.4th 253, 261).

The People contend, and appellant concedes, the record is inadequate for this court to address the claim for additional credit. We agree and reject appellant's claim for additional predisposition credit without prejudice to him raising his claim before the juvenile court.

## DISPOSITION

The order is modified to reflect the term on the assault charge is stayed and appellant's maximum confinement term is 18 years and four months. In all other respects, the order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

ASHMANN-GERST

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13