Filed 6/21/23  In re Athviel G. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re ATHVIEL G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ATHVIEL G.,<br><br>        Defendant and Appellant. | D080466<br><br><br>(Super. Ct. No. J243937) |

APPEAL from a judgment of the Superior Court of San Diego County, Ana L. España, Judge.  Affirmed as modified.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Kathryn A. Kirschbaum and Collette C. Cavalier, for Plaintiff and Respondent.

Defendant Athviel G. was 17 ½ years old when his adoptive mother, Lorena G., left for a week's vacation. She gave Athviel specific instructions that he was *not* to stay in her residence while she was away. Contrary to those instructions, Athviel entered the home through a back door he knew was inadequately secured. When Lorena returned, she discovered a substantial amount of cash missing from an unlocked safe in her bedroom closet.

Athviel was charged with residential burglary and grand theft. His primary argument on appeal is that he could not be legally convicted of burglary for entering his own residence, particularly when his mother made inadequate arrangements for alternative housing while she was away. He also claims there was insufficient evidence to support a conclusion that he entered the home with intent to steal or that he actually stole the money. We reject both of his arguments on the facts of this case.

Athviel's third argument fares better. He contends—and the Attorney General concedes—that the juvenile court violated Penal Code section 654[1] by calculating the " 'maximum term of imprisonment' " pursuant to Welfare & Institutions Code section 726, subdivision (d)(2), as including punishment for both the burglary and the related theft. Accordingly, we modify the judgment to stay any potential punishment on the theft count, and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2021, Lorena lived with her adopted son Athviel and two other (younger) children. According to Athviel, he and his mother had a

---

[1] Further undesignated statutory references are to the Penal Code.

stormy relationship due in part to his perception that she treated him differently than his siblings. These conflicts led to him being kicked out of the house on many occasions. As a result, Athviel did not have a key to the residence.

On April 17, Lorena left on a vacation to Mexico with the younger children. She instructed Athviel he was not allowed in the house while she was gone and that he was to stay with her sister (his aunt), Alicia. Lorena testified that because of a prior shooting incident where the police were called, she no longer trusted Athviel to be in the house alone.

Lorena and the children got ready to leave for Mexico early in the morning, while Athviel was still sleeping. As they were preparing to depart, they woke Athviel to tell him. Shortly after leaving the house, Lorena realized she had forgotten the passports, so she returned and retrieved them from a small safe in her closet. In addition to the passports, the safe contained a large amount of cash. In her haste, she closed but did not lock the safe.

When Lorena returned from vacation she discovered that the cash– more than $8,000—was gone. Nothing else had been taken. She reviewed the surveillance footage from the security cameras on the exterior of her house and learned that while she was gone, Athviel had entered the house through a broken back door that was secured with only a bungee cord.[2] According to the time stamp on the video, Athviel was inside the house for a little more than four minutes. Lorena insisted that at no time did she ever give Athviel permission to enter the house, go into her room, or take the money.

---

[2] The video was admitted into evidence.

Testifying at trial, Athviel conceded that when Lorena left for Mexico, he understood he was not permitted to be in the house and specifically in her bedroom. According to him, Lorena made sure he was out of the house before she left. Viewing the security video, Athviel admitted entering the house two days later through the broken back door. But he denied intending to take anything when he entered or taking anything with him when he left.

Athviel explained that when he first left the house on the morning of April 17, he tried to contact his Aunt Alicia, but she did not answer her phone. He eventually went to her house, but she was not there. After spending the night with his girlfriend's family, he was involved in an unspecified incident that left him feeling threatened and fearful.[3] He claimed that he spoke with Lorena by phone on the morning of April 19, and that she gave him permission to return to the house. Somewhat inconsistently, he said he left the house so quickly because he received a phone call from Lorena telling him that she called the police to report he had broken in.[4]

Following trial, the juvenile court declared Athviel a ward of the court based in part on his entry of Lorena's house with intent to steal (count 1—burglary, Pen. Code, § 459) and his taking of the cash from the closet safe

[3]    The court sustained the prosecutor's objection to a more detailed account, indicating that "the point of it is he felt unsafe and that's what motivated him to go to the house."

[4]    He explained this phone call by suggesting that Lorena must have been remotely monitoring the security cameras in the house.

(count 2—grand theft, Pen. Code, § 487, subd. (a)).[5] He was placed on probation subject to various terms and conditions.

## DISCUSSION

As applied to the facts of this case, burglary requires a showing that the defendant entered a building with the intent to commit a theft. (Pen. Code, § 459; see, e.g., *People v. Montoya* (1994) 7 Cal.4th 1027, 1041.) Theft requires proof that the defendant took property with the intent to permanently deprive the owner of possession. (Pen. Code, § 487; see, e.g., *People v. Avery* (2002) 27 Cal.4th 49, 54.)

Athviel's first two arguments challenge in different ways whether substantial evidence supports the judgment. In assessing the sufficiency of the evidence, our role is limited. We review the entire record to determine whether a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) In doing so, we view the evidence in the light most favorable to the prosecution. (*Ibid.*)

Athviel's third contention, involving the proper application of section 654, essentially presents a question of law on undisputed facts that we decide de novo. (*People v. Corpening* (2016) 2 Cal.5th 307, 312.)

---

[5] The petition under Welfare and Institutions Code section 602 was also sustained based on a separate unrelated burglary (count 3) that happened roughly two months later. That second burglary is relevant to the issues on this appeal only to the extent the court considered it under Evidence Code section 1101, subdivision (b) as reflective of Athviel's intent to steal when he entered Lorena's house. (See *post,* at p. 9.)

A.   *Athviel was properly convicted of burglary despite the fact that he entered his own house.*

Athviel's first argument challenges the sufficiency of the evidence to support the finding that he burglarized Lorena's residence.  Understanding our deferential standard of review on such matters (see, e.g., *People v. Smith* (2005) 37 Cal.4th 733, 738–739), he attempts to rely on undisputed facts to make what is effectively a legal argument.  But the legal argument he makes miscasts the legal principle he seeks to invoke.

There is no dispute that on April 17, immediately before Lorena left on vacation, Athviel was living in the residence with his mother and siblings.  Relying on *People v. Gauze* (1975) 15 Cal.3d 709 (*Gauze*), Athviel asserts he "cannot be guilty of burglarizing his own home."  (*Id.* at pp. 714, 717.)  Later cases have made clear, however, that the *Gauze* exception for what would otherwise be a burglary—entry of a residence with the intent to commit a felony—is based on the defendant having "an *unconditional* possessory right to enter."  (*People v. Pendleton* (1979) 25 Cal.3d 371, 382, italics added.)  Where the defendant's right to enter is based on permission from someone else, the permission rarely if ever conveys "an unconditional possessory interest in the premises."  (*In re Andrew I.* (1991) 230 Cal.App.3d 572, 579 (*Andrew I.*).)

Athviel had no unconditional or absolute right to possession of Lorena's house.  Indeed, he acknowledges being told by Lorena that he did *not* have permission to enter the house while she was gone, impliedly recognizing that *Gauze* is based on the defendant having "an absolute right" to enter the residence.  (*Gauze, supra,* 15 Cal.3d at p. 714.)  But he claims that any restrictions Lorena imposed on his right to enter were ineffective because she "did not ensure that Athviel had an alternative place to stay."  As a result of her claimed failure to provide adequate parental support, he asserts that he

retained "an unconditional possessory right to enter his own home," which would preclude and a true finding on the burglary charge.

We reject Athviel's contentions for several reasons. *Andrew I.,* which also involved a burglary of a residence owned by a minor's parent, is instructive. There, the defendant and his friend, Scott, entered a home belonging to Scott's mother. Scott previously lived in the home and had only recently left, but still had some personal belongings there. Although they purportedly were there to retrieve Scott's belongings, evidence suggested the juveniles entered the residence intending to steal other items. (*Andrew I.*, *supra*, 230 Cal.App.3d at pp. 576–577.) Andrew argued he could not have committed burglary because Scott, who had a right to enter, had given him permission to be in the house.

The court began by recognizing that whatever right Scott had, his permission did not give Andrew any unconditional possessory interest or right to enter the residence. (*Andrew I.*, *supra*, 230 Cal.App.3d at pp. 578–579.) More importantly for our purposes, it specifically rejected the notion that a possessory right in a parental residence can be implied from the parental duty of financial support. (*Id.* at p. 579, citing *In re Richard M.* (1988) 205 Cal.App.3d 7, 15 (*Richard M.*).) And even if Scott had implied permission to enter his mother's house, the permission did not create an unconditional right of access to every room in the home. (*Id.* at p. 579.)

Here, Athviel admits that Lorena specifically forbade him from entering the house while she was gone. There can be no implied permission in the face of an express prohibition. Although Athviel maintains that Lorena changed her mind and later gave him permission by phone, Lorena denied his assertion and the trial court was entitled to credit her testimony. *Andrew I.* and *Richard M.* make clear that any claimed failure on Lorena's

7

part to provide adequate alternative housing while she was away, even if true, cannot create an implied unconditional right of possession.

Moreover, the money was taken from Lorena's bedroom, a room in the house to which Athviel did not have access even when he was using the home as his residence. As the Supreme Court explained in *People v. Abilez* (2007) 41 Cal.4th 472, that the defendant "may have had a possessory right to enter the home" does not preclude a conviction for burglary of a room within the home that he was not given permission to enter. (*Id.* at p. 509; see also *People v. Sparks* (2002) 28 Cal.4th 71, 87.) Even if the court determined that Athviel was somehow authorized to be inside the house, there was substantial evidence to support a finding that he lacked permission to be in Lorena's bedroom, from which the money was taken.

B.  *There was sufficient evidence to conclude that Athviel entered the house with the intent to steal and that he in fact took the money.*

In a more traditional substantial evidence argument, Athviel contends the prosecution failed to demonstrate that he entered Lorena's house with an intent to steal. He also asserts there was insufficient proof that he actually took the cash Lorena left in the safe. But his arguments founder on the limited role we play as an appellate court. The only question we can address is whether any rational trier of fact could find beyond a reasonable doubt that all the elements of the crime were satisfied. Focusing on this question, the answer is yes.

We analyze the subparts of Athviel's argument in reverse order because the sufficiency of the evidence to show he took the money is important in assessing what his intent was when he entered the house. In asserting there was "no evidence presented" that he took the money, Athviel ignores the undisputed evidence that he gained entry through the broken back door.

8

Moreover, he further conceded remaining inside for only a few minutes, despite his claim that he took refuge there because he feared for his safety. The court noted that police officers investigating the theft found no indication that anything in the house had been disturbed, as might be expected had the home been burglarized by someone unfamiliar with its contents. One thing was missing, and that was the money. Other valuables were untouched. The only other person who had access to the residence that week (as confirmed by the surveillance video) was a friend of Lorena's who always took care of her dog when she was gone. Based on their longstanding relationship, Lorena did not believe this friend or her boyfriend (who accompanied her on one occasion) had taken the money. It was for the court as the trier of fact to evaluate the explanations offered by Athviel and Lorena to determine which was more credible. Although the money was never found, the evidence was plainly sufficient to support a finding it was taken by Athviel.

Athviel also contends there was "no evidence" he went into the house with an intent to steal. In making this argument, however, he engages in a selective reading of the record rather than viewing it in the light most favorable to the judgment. If, as we have concluded, there was sufficient evidence to find that Athviel took the money, there is a similar evidentiary basis to conclude that when he entered the house through the broken back door, he did so with an intent to steal. The fact that he lived in the house provides a reasonable inference that he knew Lorena kept money in the safe. That he remained in the duplex for only a few minutes casts doubt on his testimony that his purpose in entering was to hide from a threat of some sort. Evidence of the burglary he committed several months later (the subject of count three)—which Athviel effectively admitted after he was found with stolen property—could be considered by the court to prove his intent on this

9

earlier occasion pursuant to Evidence Code section 1101, subdivision (b). Although there is one plausible scenario where this was a crime of opportunity committed when Athviel found the safe unlocked, it hardly means there was insufficient evidence to conclude he entered with an intent to steal whatever might be available.

C.   *Penal Code section 654 precludes punishment based on both the burglary and the grand theft.*

Although Athviel was placed on probation, the juvenile court was required to calculate the " 'maximum term of imprisonment' " that could be imposed if he violated probation.  (Welf. & Inst. Code, § 726, subd. (d)(2).)  In doing so, it aggregated the middle term for the burglary charge in count 1 (four years) plus one-third the middle term for the grand theft charge in count 2 (eight months) and the burglary charge in count 3 (one year, four months), for a total maximum term of six years.  The court accepted the prosecutor's argument that section 654's prohibition on double punishment did not apply to counts 1 and 2 "since [count 2] is a separate offense" and "none of the elements in the [section 487 charge] are encompassed by the res burg."

As the Attorney General concedes, there is a fundamental problem with this reasoning.  Section 654 only applies where there are "separate offense[s]."  The question is whether the separate offenses derive from a "single act" or an "indivisible course of conduct."  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)  Here, it is well settled that where a defendant enters a structure with the intent to commit a theft and also commits the target theft, section 654 precludes punishment for both crimes because they are part of a single indivisible course of conduct.  (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468; see *In re Maurice H.* (1980) 107 Cal.App.3d 305, 313.)

10

We accept the Attorney General's concession of error, modifying the judgment to reflect a stay of any punishment on count 2 such that Athviel's maximum term of imprisonment should be five years and four months.

## DISPOSITION

The judgment is modified to specify that the maximum term of imprisonment pursuant to Welfare and Institutions Code section 726, subdivision (d)(2) should be five years and four months rather than six years. As so modified, the judgment is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.

11