Filed 5/16/16  In re Mike J. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Mike J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MIKE J.,<br><br>        Defendant and Appellant. | A144840<br><br>(San Mateo County Super. Ct. No. JV84155) |

Mike J., a minor, appeals from an order of wardship entered pursuant to Welfare and Institutions Code section 602 following the juvenile court's finding that he committed felony attempted residential burglary; willfully loitered or prowled on private property; and peeked into the door or window of an inhabited building.[1]  On appeal, the minor contends that the attempted burglary charge was sustained based on insufficient evidence, thereby violating due process.  In addition, he argues that the juvenile court erroneously imposed two conditions of probation that are unconstitutionally vague and/or overbroad.  We agree that one of the challenged probation conditions requires modification, but otherwise affirm the judgment.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

# I. BACKGROUND

Just after midnight on December 6, 2014, Anthony Wynne (Wynne) was asleep in his Atherton home when he heard some noises which woke him. Shortly thereafter, Wynne saw two males—later identified as the minor and another youth, L.C.—standing outside the sliding glass door leading from the backyard to his bedroom. Wynne's backyard was entirely enclosed by fencing. According to Wynne, his house abutted the railroad tracks and his fence, at less than six feet tall, was substantially shorter than the eight-foot-tall fences or walls of his surrounding neighbors. The property had a barn on it that was locked and full of garden tools and other "junk." No interior or exterior lights were turned on that evening. However, none of the windows or glass doors were covered with curtains or blinds and so, with illumination from the outside, it could be seen that the house was fully furnished and thus did not appear vacant.

As Wynne watched the two boys—whom he had no trouble seeing—he noticed that they "were both standing close together with the light shining on the handle [of the sliding glass door] where the latch is on the inside, not outside." The light was later determined to come from the flashlight application on L.C.'s cell phone. Wynne slid out of bed, "scooched" across the floor to the family room where his telephone was located, and called 911. While Wynne was talking to the 911 operator, the two boys appeared outside of the sliding glass door to the family room. Wynne crouched down behind the couch in an attempt to avoid detection while completing his call. The two juveniles approached the family room's sliding glass door and appeared, again, to be focused on the handle. Ultimately, the 911 operator told Wynne that the police had arrived at his residence. Shortly thereafter, Wynne saw the two boys flee in different directions—one back toward his bedroom and the other out the gate toward the back fence.

When the officers arrived at the scene, they observed the side of the residence being illuminated from the outside by what appeared to be a flashlight. As one officer opened the gate to the backyard, he saw the two boys running directly toward him. He ordered them to stop, but they split up instead. L.C. ran toward the back fence abutting the railroad tracks, dropping his cell phone along the way. An officer apprehended him

2

as he was scaling the fence. L.C. was uncooperative—struggling, jerking around, refusing to walk, flexing his muscles, and being verbally abusive. He was placed in a restraint wrap. Another officer found the minor lying on the ground in a fetal position behind several garbage cans. He was taken into custody without incident. Since both boys smelled of alcohol, they were taken to the hospital for medical clearance. Both juveniles were extremely disruptive at the hospital—the minor antagonizing staff with rude comments and L.C. feigning a seizure. They did not, however, require any medical treatment.

After the two boys were apprehended, Wynne examined the perimeter of his house and noticed that the screen door to the family room had been pushed open about one foot. It had been fully closed earlier in the evening. He also discovered a hand mark on the window to the office that had not been there earlier in the day. No burglary tools, bags, or equipment, other than the cell phone, were found at the residence, however. In addition, nothing was discovered to be missing.

In connection with this incident, the San Mateo County District Attorney (DA) filed a juvenile wardship petition pursuant to section 602 on December 9, 2014 (First Petition), alleging that the minor had committed felony attempted residential burglary (Pen. Code, §§ 460, subd. (a), 664) (count one); resisted a peace officer (Pen. Code, § 148, subd. (a)(1)) (count two); willfully loitered or prowled on private property (Pen. Code, § 647, subd. (h)) (count three); peeked into the door or window of an inhabited building (Pen. Code, § 647, subd. (i)) (count four); and was drunk in public (Pen. Code, § 647, subd. (f)) (count five).[2] On that same date, the DA also filed a separate petition alleging that, in March 2014, the minor possessed marijuana on school grounds in violation of Health and Safety Code section 11357, subdivision (e) (Second Petition). At the jurisdictional hearing on February 5, 2015, the minor admitted the charge in the Second Petition. During the contested hearing on the First Petition, the minor moved to dismiss count one on the grounds that there was insufficient evidence that he was

---

[2] Other than the attempted burglary charge, the remaining counts in the petition were all designated as misdemeanors.

3

attempting to enter the residence with the intent to steal. The juvenile court rejected this premise, however, stating: "I don't think the evidence of intoxication negates intent. . . . [¶] . . . I think the evidence is sufficient to establish that the purpose for this entire episode was to commit theft. There is no reasonable explanation for being there, for having gone over a fence apparently, for checking at least two parts of the residence to see the status. I think all of that is sufficient . . . ." Ultimately, the juvenile court granted the prosecutor's request to dismiss count five; found true counts one, three, and four; and dismissed count two.

At the dispositional hearing on February 23, 2015, the juvenile court adjudged the minor a ward of the court and placed him on formal home probation under numerous terms and conditions. Among the probation conditions imposed, the juvenile court ordered the minor to comply with the following restrictions: (1) "The Minor shall not obtain any piercing, voluntary eyebrow or hair shaving with gang significance or not in compliance with Penal Code Section 652[, subdivision] (a)" (Piercing/Shaving Condition); and (2) "The Minor shall not possess any graffiti materials, including but not limited to acid, spray paint cans, marker pens, 'white-out,' and liquid shoe polish" (Graffiti Condition). The minor filed a timely notice of appeal with respect to this dispositional order.

Thereafter, in June 2015, the minor filed a petition pursuant to section 778 requesting modification of the juvenile court's dispositional order.[3] Specifically, the minor argued that three probation conditions related to use of electronic devices and the

_____

[3] Section 778 provides in relevant part as follows: "Any parent or other person having an interest in a child who is a ward of the juvenile court or the child himself or herself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a ward of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction." (§ 778, subd. (a)(1).)

4

Internet should be stricken because they had no nexus to the offenses he committed and were unrelated to future criminality. The minor also claimed that the Piercing/Shaving Condition and the Graffiti Condition were unconstitutional as drafted and should be modified. After the hearing in August 2015, the juvenile court granted some relief— striking the conditions involving use of electronic devices and the Internet—but denied the minor's modification request with respect to the Piercing/Shaving Condition and the Graffiti Condition.

## II. SUFFICIENCY OF THE EVIDENCE

In this appeal from the juvenile court's dispositional order, the minor first challenges the sufficiency of the evidence supporting the court's finding that he committed attempted residential burglary. Burglary is the act of unlawful entry with the intent to commit theft or any felony. (Pen. Code, § 459; *Doe v. Saenz* (2006) 140 Cal.App.4th 960, 987.) "[T]he intent required for robbery and burglary is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime." (*People v. Lewis* (2001) 25 Cal.4th 610, 643 (*Lewis*).) Thus, "[w]here the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal." (*People v. Nunley* (1985) 168 Cal.App.3d 225, 232.)

Moreover, where, as here, the charge involves an attempted offense, "[a]n attempt to commit a crime is comprised of 'two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.' (§ 21a; see § 664 [prescribing punishment].) Other than forming the requisite criminal intent, a defendant need not commit an element of the underlying offense. [Citations.] We have explained that 'under California law, "[a]n attempt to commit a crime is itself a crime and [is] subject to punishment that bears some relation to the completed offense." ' " (*People v. Medina* (1974) 41 Cal.4th 685, 694, footnote omitted.)

The minor contends that there was insufficient evidence in this case that he committed an attempted burglary because there was no evidence supporting the

5

conclusion that he intended to commit either a theft or another felony inside the house. "Where the juvenile court has sustained a petition, an attack on the sufficiency of the evidence to support that ruling is governed by the substantial evidence rule. [Citation.] 'The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. The court must view the entire record in the light most favorable to the judgment (order) to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the minor guilty beyond a reasonable doubt.' [Citation.]" (*In re Andrew I.* (1991) 230 Cal.App.3d 572, 577 (*Andrew I.*).) Substantial evidence includes circumstantial evidence and all reasonable inferences flowing from such evidence. (*People v. Cole* (1994) 23 Cal.App.4th 1672, 1678.) Moreover, " ' "our opinion that the circumstances also might reasonably be reconciled with a contrary finding" does not render the evidence insubstantial.' " (*People v. Tafoya* (2007) 42 Cal.4th 147, 170 (*Tafoya*); see also *Lewis*, *supra*, 25 Cal.4th at pp. 643-644.) Finally, " '[e]xcept where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact.' (Evid. Code, § 411.) 'If a trier of fact has believed the testimony . . . this court cannot substitute its evaluation of the credibility of the witness unless there is either a physical impossibility that the testimony is true or that the falsity is apparent without resorting to inferences or deductions.' " (*Andrew I.*, *supra*, 230 Cal.App.3d at p. 578.)

Here, we find the evidence sufficient to support the charged offense. The minor, who was not from the area, was in an enclosed backyard late at night with another juvenile. (See *People v. Osegueda* (1984) 163 Cal.App.3d Supp. 25, 30 [lateness of the hour is a factor supporting intent to commit theft].) The backyard fencing was the lowest of the houses in the vicinity and thus the easiest to climb over. Although the inside of the house was dark, there were no shades on any of the glass doors or windows, and thus, with illumination, it could be seen through the glass that the house was furnished and appeared inhabited. Moreover, the two juveniles appeared to be working together to gain entry to the house through two separate sliding glass doors, using a cell phone flashlight

6

to illuminate the door handles. Immediately after the boys were arrested, the homeowner noticed that the screen to one of the patio doors had been pushed open about a foot. It had been closed when he went to bed. There was also a handprint on an office window that had not been there earlier in the evening. Indeed, the minor, himself, admits that the evidence that he and his companion investigated the handles of two separate doors by flashlight supports the inference that the two were attempting to gain entry into the house.

The minor argues, however, that there was no evidence that they intended to steal or commit a felony once they did so. Specifically, he argues that there was no evidence that they had equipped themselves to commit a burglary; that they had stolen anything from the property prior to approaching the house; or that the minor had a prior history of theft or felonious behavior. While all of these additional facts, if present in the record, would have further supported the juvenile court's conclusion that the boys intended to commit a theft, we do not find their absence dispositive. Rather, the most reasonable inference, on these facts, is clearly that the minors were attempting to enter the house with the intent to steal something. The minor, in contrast, posits that, because it was cold, the two boys may have just been seeking shelter. Or, because they were intoxicated juveniles, they might have been attempting to enter the house as a prank or on a dare. While these may be plausible alternate explanations, there is absolutely no evidence in the record with respect to either such scenario, and, even if there was, the existence of other possible explanations is insufficient to undermine the juvenile court's conclusion, based on substantial evidence, that the boys were trying to enter the house with the intention to commit a theft. (*Tafoya*, *supra*, 42 Cal.4th at p. 170; see also *Lewis*, *supra*, 25 Cal.4th at pp. 643-644.) We therefore conclude that the evidence supports the juvenile court's finding that the minor committed an attempted residential burglary.[4]

---

[4] Obviously, since we find that that there was sufficient evidence to support the attempted residential burglary charge, we also conclude that the minor's due process rights have not been violated.

7

# III. CONDITIONS OF PROBATION

The minor also argues that the juvenile court improperly imposed both the Piercing/Shaving Condition and the Graffiti Condition.  Pursuant to section 730, subdivision (b), the juvenile court, in placing a ward on probation, "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."  (See also *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).)  When fashioning appropriate conditions of probation, the juvenile court should consider the minor's entire social history in addition to the circumstances of the offense charged.  (*In re Walter P.* (2009) 170 Cal.App.4th 95, 100.)  The juvenile court's discretion in this area is quite broad.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.)  Indeed, the permissible scope of the juvenile court's discretion in formulating the terms of a minor's probation is greater than that allowed for adult probationers "[b]ecause wards are thought to be more in need of guidance and supervision than adults and have more circumscribed constitutional rights, and because the juvenile court stands in the shoes of a parent when it asserts jurisdiction over a minor."  (*In re D.G.* (2010) 187 Cal.App.4th 47, 52.)  Thus, a probation condition " 'that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.)  Generally, we review the juvenile court's imposition of probation conditions for abuse of discretion.  (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143 (*Shaun R.*).)

A juvenile court, however, must not adopt probation conditions that are constitutionally vague or overbroad.  (*Sheena K.*, *supra*, 40 Cal.4th at pp. 889-891; see also *In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).)  In order to withstand a vagueness challenge, "[a] probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' " (*Sheena K.*, *supra,* 40 Cal.4th at p. 890.)  A challenge for vagueness is grounded in due process notions of  " 'fair warning.' "  (*Ibid.*)  Thus, while

8

the language of the probation condition must have " ' "*reasonable* specificity," ' " it need not admit of " 'mathematical certainty.' " (*Ibid.*)

An overbreadth challenge, on the other hand, is "conceptually quite distinct" from an objection on vagueness grounds. (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153 (*E.O.*).) Specifically, a probation condition is unconstitutionally overbroad if it imposes limitations on a person's constitutional rights which are not closely tailored to the purpose of the condition. (*Sheena K.*, *supra,* 40 Cal.4th at p. 890; see also *Victor L.*, *supra*, 182 Cal.App.4th at p. 910 ["the overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation"].) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*E.O.*, *supra*, 188 Cal.App.4th at p. 1153.)

Our review of such constitutional challenges is de novo. (*Shaun R.*, *supra*, 188 Cal.App.4th at p. 1143.) Moreover, in an appropriate case, a probation condition that is not sufficiently precise or narrowly drawn may be modified in this court and affirmed as modified. (See, e.g., *Sheena K.*, *supra,* 40 Cal.4th at p. 892; *People v. Lopez* (1998) 66 Cal.App.4th 615, 629.)

Finally, any appellate review of conditions of probation challenged on constitutional grounds must take into account the doctrine of forfeiture. In *Sheena K.*, the Supreme Court considered at length whether and to what extent the forfeiture doctrine extends to constitutional challenges to probation conditions. (*Sheena K.*, *supra,* 40 Cal.4th at pp. 883-889.) The high court concluded that such challenges that present pure questions of law, capable of correction without reference to the particular sentencing record developed in the juvenile court, are not subject to forfeiture for failure to object in the juvenile court. (*Id.* at pp. 885-889.) Conversely, the court held that certain constitutional challenges can be forfeited, stating: "[W]e do not conclude that 'all

9

constitutional defects in conditions of probation may be raised for the first time on appeal, since there may be circumstances that do not present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." ' " (*Id.* at p. 889.)

With these concepts in mind, we consider in turn the minor's objections to the probation conditions here at issue.

## A.     *The Piercing/Shaving Condition*

As set forth above, the minor was ordered, as a condition of probation at disposition, not to "obtain any piercing, voluntary eyebrow or hair shaving with gang significance or not in compliance with Penal Code Section 652[, subdivision] (a)."[5] Although the minor argued at disposition that he was not a member of a gang and thus imposition of gang conditions—including the Piercing/Shaving Condition—was unreasonable, he made no objection to the condition on constitutional grounds.  As previously discussed, even constitutional issues may, at times, be forfeited under such circumstances.  (*Sheena K.*, *supra,* 40 Cal.4th at pp. 885-889.)  In this case, however, the constitutional challenge presents a pure question of law, capable of correction without reference to the particular sentencing record developed in the juvenile court.  We will therefore reach the merits of the issue, regardless of any procedural deficit in the juvenile court. (See *Sheena K.*, *supra,* 40 Cal.4th at pp. 885-889.)

Before we proceed with our analysis, though, we feel compelled to point out one additional procedural irregularity in this case.  Several months after the dispositional hearing in this matter—apparently at the request of his appellate attorney—the minor filed a modification petition pursuant to section 778, arguing that a number of the probation conditions imposed at disposition, including the Piercing/Shaving Condition and the Graffiti Condition, were improper.  After hearing on August 3, 2015, the juvenile court granted some relief, but denied the minor's modification request with respect to the Piercing/Shaving Condition and the Graffiti Condition.  No appeal was taken from this

---

[5] Penal Code section 652, subdivision (a), requires parental consent for the body piercing of a minor.

10

subsequent order. Nevertheless, the minor's appellate counsel subsequently asked the juvenile court to augment our record on appeal with the transcripts and court filings related to this later hearing, and the juvenile court clerk did so.

Initially, we are not convinced that a modification petition pursuant to section 778 is an appropriate vehicle for revisiting the imposition of probation conditions where no changed circumstances or new evidence have been presented. (See § 778.) We need not determine the propriety of the minor's use of such a petition to get a second bite at the apple with respect to the challenged probation conditions, however, because the arguments he raises on appeal are legal in nature and thus do not depend for their viability on the proceedings below. (*Sheena K.*, *supra,* 40 Cal.4th at pp. 885-889.) Indeed, the juvenile court's conclusions with respect to the 778 petition are not even properly before us, as the only appeal taken was from the juvenile court's February 23, 2015 dispositional order. Under such circumstances, we will not consider the juvenile court's subsequent analysis of the two probation conditions here at issue when rendering our decision. (*In re James V.* (1979) 90 Cal.App.3d 300, 304 ["an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration"].)

With respect to the merits, the minor contends that the Piercing/Shaving Condition is unconstitutionally vague because it does not require that the gang significance of the body piercing or hair shaving be known to the minor. Respondent, in contrast, asserts that a knowledge requirement need not be made explicit when it is reasonably implicit, as it is in this case; that no modification is necessary because the knowledge requirement is implicit in Penal Code section 652, subdivision (a), the statute referenced in the Piercing/Shaving Condition; and that substantially similar language has been approved by the courts in *In re Antonio C.* (2000) 83 Cal.App.4th 1029 (*Antonio C.*) and *Victor L.*, *supra*, 182 Cal.App.4th at p. 902. We believe that the minor has the better argument.

11

First, we do not find a knowledge requirement implicit in the Piercing/Shaving Condition as currently drafted.[6]  Indeed, a knowledge requirement has routinely been added "to probation conditions restricting the display of gang signs and the possession of gang paraphernalia."  (*People v. Kim* (2011) 193 Cal.App.4th 836, 844 (*Kim*), citing *People v. Leon* (2010) 181 Cal.App.4th 943, 950, 954 [condition modified with consent of the Attorney General to " 'You are not to possess, wear or display any clothing or insignia, tattoo, emblem, button, badge, cap, hat, scarf, bandanna, jacket, or other article of clothing that you know or the probation officer informs you is evidence of, affiliation with, or membership in a criminal street gang.' "]; *In re Vincent G.* (2008) 162 Cal.App.4th 238, 247-248 [condition modified to " 'You are not to possess, wear or display any clothing or insignias, emblems, badges, or buttons that you know, or that the probation officer informs you, are evidence of affiliation with or membership in a gang; nor display any signs or gestures that you know, or that the probation officer informs you, are gang gestures.' "]; and *People v. Lopez*, *supra*, 66 Cal.App.4th at pp. 634-635, 638 [condition modified to state: " 'He may not wear or possess any item of gang clothing known to be such by defendant including any gang insignia, moniker or pattern, jewelry with gang significance nor may he display any gang insignia, moniker or other markings of gang significance known to be such by defendant on his person or property as may be identified by law enforcement or the probation officer.' "].)  As the *Kim* court explained, "an express knowledge requirement is reasonable and necessary" in such cases because "it takes some experience or training to identify what colors, symbols, hand signs, slogans, and clothing are emblematic of various criminal street gangs."  (*Kim*, *supra*, 193 Cal.App.4th at p.845; but see *People v. Moses* (2011) 199 Cal.App.4th 374, 380-381 [discussing contrary authority].)

---

[6] Contrary to Respondent's contention, the reference to Penal Code section 652, subdivision (a) in the Piercing/Shaving Condition, does not change this fact because, as the minor points out, the parental consent requirement contained in that statute has nothing to do with whether a particular piercing has gang significance.  Moreover, the statute is inapplicable to hair shaving.

Moreover, the other gang conditions imposed in this case all have explicit knowledge requirements included within them. This further argues against implying a knowledge requirement in the Piercing/Shaving Condition. Indeed, if anything, the lack of express knowledge language in this one instance creates the contrary implication—that there is some reason why the Piercing/Shaving Condition was drafted differently than the other gang conditions with respect to scienter. The better approach would clearly be to treat all of these related gang conditions in a similar fashion. As one appellate court has opined: "[T]hought must be given in each case to the specific language of the condition, the particular offense, and the background of the juvenile, *so that the conditions are internally consistent*, reasonably clear, and closely tailored to the rehabilitative needs of the individual before the court." (*Victor L.*, *supra*, 182 Cal.App.4th at p. 930, italics added.)

Finally, neither *Antonio C.* nor *Victor L.* helps respondent on this issue. In *Antonio C.*, the court found that a probation condition which prohibited *all* new piercings was unreasonable under *People v. Lent* (1975) 15 Cal.3d 481, because it had no relationship to the minor's offense, related to conduct that was not criminal, and was not reasonably related to future criminality. (*Antonio C.*, *supra*, 83 Cal.App.4th at p. 1036.) The court therefore modified the challenged probation condition to read in pertinent part: "[T]he minor shall not . . . obtain any piercings *with gang significance or not in compliance with Penal Code section 652, subdivision (a)*." (*Ibid.*, italics added.) However, the *Antonio C.* court never considered whether an express statement of knowledge was necessary to protect this probation condition from a constitutional vagueness challenge. In *Victor L.*, the appellate court rejected a juvenile ward's argument that a condition of probation forbidding him to acquire "any new tattoos, brands, burns or voluntary scarring" was an overbroad restriction on his First Amendment freedom of expression. (*Victor L.*, *supra*, 182 Cal.App.4th at p. 927.) In doing so, the court noted that *Antonio C.* had upheld essentially identical language against a first amendment challenge. However, the holding in *Antonio C.* with respect to piercings was not at issue; nor was the question of scienter raised. (*Victor L.*, *supra*, 182

13

Cal.App.4th at pp. 927-928.) Thus, neither of these cases addressed or resolved the vagueness question presented here. (*E.O., supra,* 188 Cal.App.4th at p. 1156 [a decision is authority only for points actually addressed].)

For all of these reasons, we will modify the Piercing/Shaving Condition to contain the knowledge requirement requested by the minor. Specifically, the condition shall be amended to read as follows: "The minor shall not obtain any piercing, voluntary eyebrow or hair shaving known to the minor to have gang significance or not in compliance with Penal Code Section 652, subdivision (a)."

**B.** *The Graffiti Condition*

The minor additionally challenges imposition of the Graffiti Condition, which provides: "The Minor shall not possess any graffiti materials, including but not limited to acid, spray paint cans, marker pens, 'white-out,' and liquid shoe polish." Specifically, he contends that the Graffiti Condition is unconstitutionally vague "because it does not adequately specify what items constitute graffiti materials" and unconstitutionally overbroad "because it prohibits the possession of a myriad of essential items commonly used for lawful purposes." To cure these perceived defects, the minor asks us to modify the Graffiti Condition to read: "The Minor shall not *knowingly* possess any graffiti materials, including but not limited to acid, spray paint cans, marker pens, 'white-out,' and liquid shoe polish, *with the intent to commit vandalism or graffiti*." Again, the minor did not raise this constitutional challenge at disposition, but we will reach the merits regardless as the issue is purely legal in nature. (*Sheena K.*, *supra,* 40 Cal.4th at pp. 885-889.)

Unlike the previous probation condition, however, we see no need for the modified language requested by the minor. The Graffiti Condition does not prohibit the possession of markers, spray paint, and shoe polish. Rather, it forbids possession of "graffiti materials." Thus, implicit in the condition is the minor's intent to use these otherwise common items for the proscribed purpose—graffiti. Moreover, if the minor intends to use the items for graffiti purposes he obviously has knowledge that such items do, in fact, constitute "graffiti materials."

14

Further, the minor's suggestion that Penal Code section 594.2 (section 594.2) supports his position is unavailing. In fact, the statute undercuts the minor's argument. Pursuant to section 594.2: " Every person who possesses a masonry or glass drill bit, a carbide drill bit, a glass cutter, a grinding stone, an awl, a chisel, a carbide scribe, an aerosol paint container, a felt tip marker, or any other marking substance *with the intent to commit vandalism or graffiti*, is guilty of a misdemeanor." (§ 594.2, subd. (a), italics added.) The minor maintains that express language of intent should be included in the Graffiti Condition to match the language of section 594.2. However, the express intent language set forth in section 594.2 is necessary *precisely because* the statute does not otherwise characterize the prohibited items as anything other than ordinary, everyday tools (i.e., various drill bits, chisels, awls, spray paint, markers, etc.) Thus, the intent language is needed in section 594.2 to limit the reach of the statute to unlawful behaviors. Here, in contrast, to be prohibited by the Graffiti Condition the restricted items must constitute "graffiti materials"—that is, items intended for use in the making of graffiti. Thus, no further clarification is required.

## IV. DISPOSITION

The juvenile court's disposition order is modified as follows: The second sentence of the Piercing/Shaving Condition is modified to state, "The minor shall not obtain any piercing, voluntary eyebrow or hair shaving known to the minor to have gang significance or not in compliance with Penal Code Section 652, subdivision (a)." As so modified, the judgment is affirmed.

15

                                    _____
                                    Reardon, Acting P.J.


We concur:


_____
Rivera, J.


_____
Streeter, J.